FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2016 MAR -4 P 2: 12

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

HAIR CLUB FOR MEN, LLC,
a Delaware limited liability company,

Plaintiff,

v.

LAILUMA L. EHSON
7211 Sumpter Lane
Springfield, VA 22150

and

ILLUSION DAY SPA, LLC,
a Virginia limited liability company,
6715 J Backlick Road
Springfield, Virginia 22150,

Defendants.

Civil Action No. 1:16CV236
LOG / JFA

## VERIFIED COMPLAINT AND PETITION FOR PRELIMINARY INJUNCTION

Plaintiff Hair Club for Men, LLC ("Hair Club"), for its Complaint and Petition for Preliminary Injunction against Defendants Lailuma Ehson and Illusion Day Spa, LLC, alleges and states as follows:

### NATURE OF THE ACTION

Hair Club brings this Complaint against Ehson and Illusion Day Spa seeking preliminary and permanent injunctive relief to address Ehson's flagrant violation of her confidentiality, non-solicitation and non-compete covenants with Hair Club and the misappropriation of trade secrets and confidential and proprietary information. Hair Club also seeks injunctive relief to prevent Ehson's company, Illusion Day Spa, from continuing to tortiously interfere with the agreements

DBI/ 86537086.4

between Hair Club and Ehson and Hair Club and its customers, to halt its misappropriation of Hair Club's trade secrets and confidential and proprietary information, and to cease its (and Ehson's) unfair competition.

Specifically, Hair Club seeks a preliminary injunction enjoining Ehson from operating or working at Illusion Day Spa in competition with Hair Club until final resolution of this matter; enjoining Ehson from further breaches of her contractual and common law obligations to Hair Club; enjoining Ehson's company, Illusion Day Spa, from interfering with Hair Club's contractual relationships with Ehson and its customers and prospective customers, servicing Hair Club's customers and misappropriating Hair Club's trade secrets and confidential and proprietary information; and ordering Illusion Day Spa and Ehson to disgorge any profits they have unlawfully received as a result of Ehson's violation of her contractual and common law obligations.

Ehson's and Illusion Day Spa's conduct has damaged Hair Club's business, goodwill and existing and prospective customer relationships. Without injunctive relief, Hair Club's business will continue to suffer irreparable harm.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are diverse in citizenship and the amount in controversy exceeds $75,000, Va. Code § 59.1-336 et seq. (Virginia Uniform Trade Secrets Act).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Hair Club is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. Hair Club owns and operates hair loss treatment centers

throughout the United States, including a facility located at 7900 Westpark Drive, Suite T100, McLean (Tysons Corner), Virginia 22102. It also owns and operates hair loss treatment centers in Canada and Puerto Rico through affiliated entities.

4. Lailuma L. Ehson is a citizen of the Commonwealth of Virginia with her principal residence located in Springfield, Fairfax County, Virginia.

5. Illusion Day Spa, LLC is organized under the laws of the Commonwealth of Virginia and maintains a principal place of business at 6715 J Backlick Road, Springfield, Virginia 22150.

## FACTUAL BACKGROUND

6. Hair Club is in the business of hair replacement and hair therapies. It provides a variety of hair restoration services, including the non-surgical Xtrands+ hair replacement options with its Strand-by-Strand® process, a non-surgical topical hair loss prevention and restoration program and, in some locations, surgical hair transplants through an affiliated entity. Hair Club confidentially provides its clients with hair loss remedies and follow-up hair replacement services that result in a cosmetic improvement for clients experiencing hair loss. Hair Club's services do not stop at one-time treatment. Rather, the core component of the company's business is its provision of regular application of hair systems and related maintenance and styling services to its client.

7. Ehson was employed by Hair Club as a Stylist from 2011 to July 24, 2015, when she voluntarily resigned her employment.

8. At the time of, and in consideration for, her employment with Hair Club, Ehson executed a valid and enforceable Confidentiality, Non-Solicitation and Non-Compete Agreement (the "Agreement"). The Agreement is attached hereto as Exhibit A.

9. In the performance of her duties as a Stylist, Ehson was given the opportunity to have close contact with Hair Club clients. Specifically, Ehson met regularly with customers at the McLean (Tysons Corner), Virginia location and provided them with both hair replacement treatments and styling services. In essence, Ehson was afforded the opportunity to be Hair Club's "public face" with respect to customers—customers procured and developed at great expense by Hair Club.

10. Ehson was also the beneficiary of Hair Club's significant investment in marketing and advertising. Hair Club engages in an extensive television advertising campaign, has established a state-of-the-art internet site, and employs a telephone sales support team, which, among other things, (i) fields calls from prospective Hair Club members; (ii) follows up on leads; and (iii) directs prospective members to Hair Club locations such as the Tysons Corner location.

11. In order to provide effective services to customers, Hair Club's stylists and technicians, like Ehson, are routinely trained on Hair Club techniques and practices. Specifically, they learn detailed hair replacement methods that are unique to Hair Club and that constitute trade secrets. These techniques are developed by Hair Club and marketed at great expense to Hair Club members. As part of and throughout her employment, Ehson was trained and retrained in the latest Hair Club hair replacement methods.

12. As a consequence of her employment with Hair Club, Ehson had access to Hair Club's confidential information regarding customer lists, confidential customer-specific information (telephone numbers, for example) and pricing strategies. This information is the product of extensive work and expense by Hair Club and is highly valuable.

13. In order to protect its trade secrets, confidential and other proprietary information, and in consideration for employment of Ehson and providing her with access to such

information, Hair Club required Ehson to execute the Agreement, which contains restrictive covenants, including non-solicitation and non-competition covenants. Hair Club requires all employees, including prospective consultants and hair replacement stylists and technicians to agree to these restrictive covenants as a condition of their employment with Hair Club.

14. Through the execution of the Agreement, Ehson acknowledged "that the Company's business of hair replacement is based largely on certain confidential information, including but not limited to lists of past, current and prospective customers, price lists, lists of employees, and other records of the Company acquired, collected and classified as the result of a substantial expenditure of money and time." See Agreement at § 3.

15. Ehson further recognized that:

> [T]he trade and goodwill of the Company with its customers has been established at a substantial cost to, and great effort on the part of, the Company; that irreparable damage will result to the Company if such lists, records or information are obtained or used by any other person or competitor of the Company, or if said goodwill is diverted from the Company; and that [her] employment [was] ... obtained and is based upon the trust and confidence reposed by the Company in [her] with respect to the proper use of such lists, records, and information solely for the Company's benefit.

Agreement at § 3.

16. In addition, Ehson acknowledged "that the giving of such employment afford[ed] [her] an opportunity to develop favorable relations with the customers of the Company and access to such confidential lists, records and information concerning the Company's business." Agreement at § 3.

17. In view of the foregoing and in consideration for her employment by Hair Club, Ehson agreed, voluntarily and without objection, that:

> [I]n the event of the termination of [her] employment, at any time, whether by discharge, resignation or for any other reason, [she would] not for a period of two (2) years from the date of termination engage in the business of hair replacement,

> on [her] own account, or become interested in such business directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or in any other relation or capacity whatsoever, within a radius of the twenty (20) miles of any Hair Club center operated by the Company or any of its franchises or affiliates.

Agreement at § 3(a).

18. Ehson further agreed that:

> In the event of termination of [her] employment, at any time, whether by discharge, resignation or for any other reason, [she would] not for a period of two (2) years from the date of termination directly or indirectly solicit, circularize or aid in soliciting or circularizing (generally or specifically), any business relating to hair replacement from ... any customer or customers of the Company.

Agreement at § 3(b).

19. Ehson further covenanted not to "deal with, or provide hair replacement services to, any customers who have, within two (2) years prior to the cessation of [her] employment, dealt with the Company." Agreement at § 3(b).

20. The non-solicitation provision to which Ehson and other Hair Club employees agreed is essential to Hair Club's ability to develop and maintain its client base. Hair Club goes to great expense identifying and acquiring new clients, maintaining existing ones, and developing solid personal relationships between Hair Club employees and clients, all of which is a critical part of Hair Club's ability to retain existing customers over the years.

21. The non-solicitation provision of the Agreement is particularly important given the nature of Hair Club's business and the sensitivity of its client base. In particular, Hair Club goes to great lengths to ensure the confidentiality of its customers, many of whom prefer to remain anonymous. Indeed, great emphasis is placed on confidentiality in Hair Club's promotional materials. Thus, Hair Club's clients have come to expect that their names and contact information will be held in the strictest confidence by Hair Club, and that their

identifying information will not be used at will by former employees of Hair Club for the purpose of soliciting business.

    22.    In addition to the foregoing, Ehson further agreed that:

> During the term of my employment and thereafter, I will not at any time, directly or indirectly, use or disclose to any persons, except the Company and its duly authorized officers and employees entitled thereto, the Company's ... customer lists (past, present, or prospective), price lists, lists of employees and requirements for present and prospective customers as well as other records, statistics or other information acquired by me in the course of employment in any capacity whatsoever, or in any manner directly or indirectly aid or be party to any act, the effect of which will [tend] to divert, diminish or prejudice the goodwill or business of the Company or its franchisees or affiliates.

Agreement at § 3(c).

    23.    In the event of the termination of her employment for any reason, Ehson agreed that she would:

> [R]eturn to the Company all of its property including, without limitation, the Company's customer lists (past, present or prospective), price lists, lists of employees, requirements for past, present, or prospective customers of the Company, as well as other records, statistics or other information acquired by [her] in the course of [her] employment which is in [her] possession at the time of [her] termination."

Agreement at § 3(d).

    24.    In the event of the termination of her employment for any reason, Ehson also agreed not to "publicize (or allow any business with which [she] is associated) publicize the fact that [she] was an employee of the Company or otherwise use the Company's name for any pecuniary gain." Agreement at § 3(f).

    25.    Finally, Ehson acknowledged that irreparable harm would result from any breach of the Agreement, and that Hair Club thus would be entitled to immediate injunctive relief and other remedies:

> I acknowledge that irreparable damage will result to the Company, its business and property, in the event of my breach of any of the covenants and assurances contained herein, and that I have been employed by the Company primarily in reliance upon my covenants and assurances herein contained, and I agree that in the event of my breach or default with respect to any of such covenants or assurances, the Company shall be entitled to an injunction restraining my violation of such covenants, in addition to any other remedies or damages which may be available to it.

Agreement at § 3(g).

26. The restrictive covenants entered into by Ehson are valid and enforceable. The Agreement was entered into upon mutual agreement and Ehson received valuable consideration, including but not limited to employment and access to Hair Club's trade secrets and other confidential and proprietary information in exchange for her covenants.

27. During Ehson's final day of employment with Hair Club, Amy Rohrbaugh, Area Manager – East Region, and at the time, Managing Director of the Tysons Corner Hair Club center, reminded Ehson of her non-competition and non-solicitation covenants and informed her that Hair Club takes those obligations very seriously.

28. On information and belief, Ehson began performing hair replacement services for Illusion Day Spa—a direct Hair Club competitor—in or shortly after November 2014, while she was still was working for Hair Club.

29. On information and belief, Ehson is using Hair Club trade secrets and other confidential and proprietary information to perform hair replacement services for Illusion Day Spa, including without limitation Hair Club's hair replacement techniques, customer lists, confidential costumer-specific information such as dimensions and specifications of clients' non-surgical hair systems, detailed hair replacement methods that are unique to Hair Club, and confidential client-specific information. Illusion Day Spa is located 15.5 miles from Hair Club's Tysons Corner location.

30. Since Ehson's departure from Hair Club on July 24, 2015, Hair Club's Tysons Corner location has lost numerous clients, all of whom were serviced by Ehson.

31. Hair Club has substantial, direct proof that Ehson has been soliciting Hair Club's customers and providing hair replacement services to those and other customers at Illusion Day Spa, all in violation of her restrictive covenants, including but not limited to:

- Hair Club employees spoke with several Hair Club clients in September 2015 who advised that they were receiving hair services from Ehson. Three Hair Club clients have advised Hair Club employees that Ehson attempted to solicit them while she was still employed with Hair Club.

- Several Hair Club clients have confirmed paying Ehson on a monthly basis for hair services, including one client who has confirmed paying Ehson $300 per month for hair services.

- On December 12, 2015, an undercover investigator called Illusion Day Spa to inquire about a walk-in men's haircut. The investigator was advised that walk-in haircuts were accepted. The investigator entered Illusion Day Spa at 6:01 p.m. to receive a haircut.

- While his hair was being washed, the investigator told an employee that his brother was considering hair replacement. The employee informed the investigator that Ehson performs hair replacement and has a lot of clients. The employee also provided the investigator with Ehson's business card.

- On January 2, 2016, an undercover investigator observed a building permit on the exterior of the Illusion Day Spa storefront, which listed Ehson as the owner/tenant of Illusion Day Spa.

- To date, Hair Club has had at least 15 client cancellations that it believes are a result of Ehson's violations of her non-competition and non-solicitation covenants with Hair Club.

32. As described above, Ehson and Illusion Day Spa have caused Hair Club to lose clients and revenue in excess of $75,000 due to loss of contracts, their anticipated past and future value, compensatory and punitive damages, and attorney fees, and, more importantly, damaged its reputation and goodwill. Unless and until Ehson's and Illusion Day Spa's improper conduct is restrained, Hair Club faces additional harm in the future.

## COUNT I
## BREACH OF CONTRACT
### (Against Ehson)

33. Hair Club hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 32 as if fully set forth herein.

34. The Agreement is a duly executed and enforceable contract, giving rise to legal obligations between Ehson and Hair Club. Pursuant to the Agreement, Ehson agreed that she would not directly or indirectly solicit clients or employees of Hair Club during the term of her employment with Hair Club and for two years thereafter.

35. Ehson also agreed not to engage in the business of hair replacement within twenty (20) miles of any Hair Club center operated by the Company or any of its franchises or affiliates.

36. The restrictive covenants of non-competition and non-solicitation are supported by adequate consideration and are valid and enforceable under Virginia law.

37. The restrictive covenants of non-competition and non-solicitation are necessary and tailored to protect Hair Club's legitimate business interests, including but not limited to Hair Club's goodwill, relationships with existing and prospective clients, and confidential and proprietary business information.

38. Hair Club provided consideration for and fully performed its obligations under the Agreement by employing Ehson and teaching her proprietary hair replacement techniques until her separation from employment.

39. Ehson breached her obligations under the Agreement by actively soliciting Hair Club customers and performing hair replacement services, both while she was employed with Hair Club and since her resignation, in competition with Hair Club and within 20 miles of Hair Club's McLean (Tysons Corner), Virginia center. Ehson's breach of these covenants continues

to this day, and will continue unless and until she is ordered to abide by the obligations to which she agreed when she executed the Agreement.

40. Hair Club has suffered damages in excess of $75,000 as the direct and proximate consequence of Ehson's breaches of the covenants contained in the Agreement.

41. Hair Club is entitled to recover compensatory and consequential damages as the result of Ehson's violation of the Agreement, and is further entitled to prospective injunctive relief to prevent Ehson from engaged in further misconduct. See Agreement at § 3(g).

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS/CONFIDENTIAL INFORMATION
### (Against Ehson and Illusion Day Spa)

42. Hair Club hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 41 as if fully set forth herein.

43. A confidential relationship existed between Hair Club and Ehson as a result of her execution of the Agreement.

44. Hair Club's confidential and proprietary business information qualifies for trade secret protection under Virginia law. Hair Club's business information derives independent economic value and gives Hair Club an advantage over its competitors because such information is not generally known to Hair Club's competitors or to others in the industry, and because it is not easily acquired through proper means by Hair Club's competitors or by others in the industry.

45. Hair Club has invested substantial time and money in developing this trade secret and other confidential information, and Hair Club has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets and other confidential information. Access to Hair Club's trade secrets and other confidential information is given to Hair Club's

employees only to the extent required by their positions and only upon their execution of agreements similar to the one at issue in this case.

46. In breach of both the Agreement and Virginia law, Ehson and Illusion Day Spa misappropriated Hair Club's trade secrets and other confidential information by actually using or disclosing them in the context of Ehson's performance of hair replacement services at Illusion Day Spa. Among other things, Ehson and Illusion Day Spa used confidential information relating to the identity of Hair Club customers, as well as the types of hair replacement methods and styling received.

47. Hair Club has suffered and will continue to suffer damages as a direct and proximate result of the misappropriation of its trade secrets and other confidential information by Ehson and Illusion Day Spa, for which it is entitled to recover damages from Ehson and Illusion Day Spa pursuant to the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-338, and the common law.

48. Ehson's and Illusion Day Spa's conduct as alleged in this Complaint has been wrongful, willful and malicious. Accordingly, Hair Club is entitled to recover from Ehson and Illusion Day Spa punitive damages, in addition to its actual damages and its attorney fees, pursuant to Va. Code §§ 59.1-338(B) and 59.1-338.1.

### COUNT III
### WRONGFUL INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS ADVANTAGE
(Against Ehson and Illusion Day Spa)

49. Hair Club hereby incorporates by reference and realleges the allegations in Paragraphs 1 through 48 as if fully set forth herein.

50. At all times relevant hereto, Hair Club had valid and enforceable contracts with its clients. These contracts describe the type of hair replacement technique that will be used on the client and the price of the service.

51. Ehson and, upon information and belief, Illusion Day Spa had knowledge of the existence of these contracts.

52. Despite this knowledge, and despite Ehson's obligation not to solicit Hair Club's clients, Ehson and Illusion Day Spa intentionally solicited Hair Club clients to leave Hair Club and obtain hair replacement services from her and Illusion Day Spa.

53. This intentional interference with the business relationships between Hair Club and its clients has induced — and will continue to induce — clients to cancel their contracts with Hair Club in the future. Moreover, this intentional interference was improper because, *inter alia,* it was the product of Ehson's breach of both the Agreement and her duty of loyalty to Hair Club, and because it was the result of Ehson's and Illusion Day Spa's misuse of insider and confidential information.

54. Moreover, by engaging in the aforementioned tortious conduct with the intent to do harm to Hair Club and its reputation and goodwill, Ehson and Illusion Day Spa are intentionally attempting to interfere with Hair Club's ability to attract prospective business that is the product of Hair Club's very significant investment in marketing and advertising.

55. Hair Club has suffered and will continue to suffer damages as a result of Ehson's and Illusion Day Spa's actions.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against Illusion Day Spa)

56. Hair Club hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 55 as if fully set forth herein.

57. On information and belief, Illusion Day Spa had knowledge of the terms of the restrictive covenants contained in the Agreement at the time Ehson opened, began operating and/or took ownership of it.

58. On information and belief, despite knowledge of the terms of Ehson's restrictive covenants, Illusion Day Spa intentionally engaged Ehson to perform hair restoration services for Illusion Day Spa, to solicit Hair Club's current and prospective customers, and to misappropriate, use, and or disclose Hair Club's confidential, proprietary, and trade secret information.

59. Despite knowledge of Ehson's restrictive covenants, Illusion Day Spa intentionally interfered with Hair Club's contracts with Ehson and engaged Ehson to work for Illusion Day Spa in violation of her restrictive covenants.

60. As a result of the actions of Illusion Day Spa, Hair Club has and will continue to be injured.

61. As a direct and proximate result of Illusion Day Spa's wrongful conduct, Hair Club has suffered and will continue to suffer irreparable harm and injury, including, without limitation, the loss of proprietary and confidential and trade secret information, competitive advantage, income, revenue, customers, and/or profits.

62. Hair Club has no adequate remedy at law and is entitled to appropriate injunctive relief.

63. The wrongful acts of Illusion Day Spa, as set forth above, will continue unless enjoined.

64. Hair Club has suffered and will continue to suffer damages as a result of Illusion Day Spa's actions. Illusion Day Spa's actions, as set forth above, are wrongful, willful, malicious and without legitimate business justification. Accordingly, Hair Club is entitled to recover from Illusion Day Spa punitive damages, in addition to its actual damages.

### COUNT V
### UNJUST ENRICHMENT
(Against Ehson and Illusion Day Spa)

65. Hair Club hereby incorporates by reference and realleges the allegations of Paragraphs 1 through 64 as if fully set forth herein.

66. Ehson and Illusion Day Spa have unjustly benefited from using Hair Club's confidential, proprietary information and trade secrets to improperly solicit Hair Club's clients and steal business from Hair Club.

67. Ehson has taken and retained Hair Club's trade secrets, which she is using in her employment, operation or association with Illusion Day Spa, thereby increasing the value of Ehson's employment or ownership of Illusion Day Spa, as well as Illusion Day Spa's business.

68. Illusion Day Spa has taken advantage of Hair Club by using Ehson to make use of Hair Club's trade secrets and customer relationships to add to its existing customer base.

69. Illusion Day Spa and Ehson have been unjustly enriched at the expense of Hair Club in an amount to be proven at trial.

70. Hair Club is entitled to recover the amount by which Illusion Day Spa and Ehson have been unjustly enriched by use of Hair Club's employees and customer relationships and trade secrets in developing its customer base, by soliciting Hair Club's customers through the use

of trade secrets, which has increased the value of Ehson's employment with Illusion Day Spa and Illusion Day Spa's business and for which Hair Club has not been adequately compensated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that:

A. Pursuant to Federal Rule of Civil Procedure 65 and Va. Code §§ 59.1-336 et seq., the Court: (i) preliminarily and permanently enjoin Ehson and Illusion Day Spa from using, disclosing, or otherwise misappropriating any of Hair Club's trade secrets or other confidential or proprietary information; (ii) prospectively enjoin Ehson and Illusion Day Spa, for a period of two years following the entry of judgment against them, from directly or indirectly soliciting any Hair Club customers or employees; (iii) prospectively enjoin Ehson and Illusion Day Spa, for a period of two years following the entry of judgment against them, from dealing with or providing hair replacement services to any customers who dealt with Hair Club during the two years prior to the cessation of Ehson's employment; (iv) prospectively enjoin Ehson and Illusion Day Spa, for a period of two years following the entry of judgment against her, from engaging in the business of hair replacement in any capacity within a radius of 20 miles of any Hair Club center operated by Hair Club or any of its franchisees or affiliates; (v) preliminarily and permanently enjoin Ehson and Illusion Day Spa from publicizing the fact that she was a Hair Club employee or otherwise using Hair Club's name for pecuniary gain (except that Ehson may disclose her Hair Club employment on resumes for bona fide prospective employment) or (vi) preliminary and permanently enjoin Illusion Day Spa from interfering with or furthering Ehson's obligations as set forth in items A(i)-(v) of this paragraph;

B. The Court order Ehson and Illusion Day Spa to make Hair Club whole by awarding Hair Club compensatory damages for past and future pecuniary losses resulting from

Ehson's and Illusion Day Spa's unlawful conduct, including the actual loss and the unjust enrichment caused by the unlawful conduct pursuant to Va. Code § 59.1-338(A), in an amount, in excess of $75,000, to be proven at trial.

  C. That the Court award punitive damages, including pursuant to Va. Code § 59.1-338(B);

  D. The Court award Hair Club its attorneys' fees and costs, including pursuant to Va. Code § 59.1-338.1;

  E. The Court tax the cost of this action against Ehson and Illusion Day Spa; and

  F. The Court grant Hair Club such other and further relief as it may deem just and proper.


Dated: March 4, 2016

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jocelyn Cuttino*
Jocelyn R. Cuttino (VA Bar No. 81379)
1111 Pennsylvania Avenue NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
jocelyn.cuttino@morganlewis.com

*Attorneys for Plaintiff Hair Club for Men, LLC*

STATE OF ~~VIRGINIA~~ New York
COUNTY OF ~~FAIRFAX~~ New York

## VERIFICATION

Amy Rohrbaugh, being first duly sworn, deposes and states that: 1) she is currently an Area Manager – East Region for Hair Club for Men, LLC, Plaintiff in this action, and was previously Managing Director of the Tysons Corner Hair Club center, LLC; 2) she is authorized to make this oath on behalf of the Plaintiff; 3) she has read the foregoing and attached Verified Complaint; and 4) she knows the contents of the Verified Complaint to be true, or as to those matters set forth on information and belief, she believes them to be true or understands them to be true based on knowledge of the Plaintiff, its agents, representatives and attorneys, unless privileged. Word usage and sentence structure may be that of the attorneys assisting in the preparation of the Complaint and thus does not purport to be the precise language of the person executing the same.

Name: Amy Rohrbaugh
Title: Area Manager – East Region
Hair Club for Men, LLC

SWORN to and subscribed before me
this 3 day of March, 2016.
Notary Public
My Commission Expires: 10/05/2019
(Affix Notarial Seal)

