

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HAIR CLUB FOR MEN, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16-cv-236 |
| ) | |
| LAILUMA EHSON and ILLUSION DAY SPA, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

## Memorandum Opinion

This matter comes before the Court on Plaintiff Hair Club for Men's ("Hair Club") Motion for Preliminary Injunction. Dkt. No. 3. Plaintiff asks this Court generally to prevent Defendants from engaging in the business of hair replacement in any capacity within a radius of twenty miles of any Hair Club center, soliciting or dealing with Hair Club customers, and disclosing or distributing any Hair Club trade secrets. For the reasons outlined below, the Court finds good cause to DENY the Motion.

### I. Background

Hair Club is in the business of hair replacement and hair therapies. Hair Club employed Defendant Lailuma Ehson in its Tysons Corner location from 2011 until July 24, 2015, when Ehson voluntarily resigned. Hair Club asserts that during her time at Hair Club, Ehson learned detailed and unique hair replacement methods that were developed by Hair Club. In addition, Ehson had access to Hair Club's customer lists, customer information, and pricing strategies.

When Ehson was hired, she signed a "confidentiality, non-solicitation and non-compete agreement." Through this agreement, Ehson agreed that she would not compete with Hair Club

1

by engaging in the hair replacement business in any capacity within a radius of twenty miles from any Hair Club center for a period of two years from the termination of her employment, "whether by discharge, resignation or for any other reason." Ehson also agreed not to solicit any hair replacement business from Hair Club customers for two years after the termination of her employment. Ehson further agreed not to use or disclose, during or after her employment, any of Hair Club's confidential information including customer lists, price lists, lists of employees, and customer information. Finally, Ehson agreed that after leaving the employ of Hair Club she would not publicize, or allow any business she is associated with, to publicize the fact that she is a former Hair Club employee.

In October of 2014, while still working at Hair Club in Tysons Corner, Ehson organized and opened Defendant Illusion Day Spa ("Illusion"), which is located approximately 15.5 miles from Hair Club's Tysons Corner location. Hair Club alleges Ehson began advertising and performing hair replacement services at Illusion in November of 2014. Hair Club also alleges that Ehson solicited its customers for her new business while she was still employed at Hair Club.

Based on these facts, Hair Club filed the Complaint and the Motion for Preliminary Injunction in this Court on March 7, 2016. Hair Club brings five causes of action against the Defendants:

- Count I: breach of contract (against Ehson);
- Count II: misappropriation of trade secrets and confidential information (against Ehson and Illusion);
- Count III: wrongful interference with contract and prospective business advantage (against Ehson and Illusion);
- Count IV: tortious interference with contractual relations (against Illusion); and
- Count V: unjust enrichment (against Ehson and Illusion).

## II. Legal Standard

In order to succeed on a request for preliminary injunction, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)) (internal quotation marks omitted).

## III. Discussion

### A. Likelihood of Success on the Merits

Hair Club must first establish that it is likely to succeed on the merits of its claims. This Court will address the likelihood of success for each of the five Counts Hair Club has asserted in turn.

#### 1. Count I: Breach of Contract

Hair Club first asserts that Ehson violated the non-competition and non-solicitation clauses of her contract. The elements of a breach of contract action under Virginia law are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Defendants

3

challenge the first element—whether the contract at issue is a legally enforceable obligation—on the grounds that the non-compete and non-solicitation clauses are overly restrictive.

*a. Validity of the Non-Competition Clause*

"[T]he validity of a restrictive covenant is a question of law resolved in light of the language and circumstances surrounding the specific covenant at issue." *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 826 (E.D. Va. 2011). Covenants that restrain trade are disfavored by Virginia courts and if they are too restrictive they may not be legally enforceable. *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 493 (2002). The validity of an employer-employee non-competition agreement is determined using a three part test which the employer has the burden to meet. *Id.* at 494-95. The employer must show "that the restraint [1] is no greater than necessary to protect a legitimate business interest, [2] is not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and [3] is reasonable in light of sound public policy." *Id.* In analyzing these "three interrelated factors" Virginia courts consider "the restriction in terms of function, geographic scope, and duration." *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001).

Virginia Courts have "assessed the function element of provisions that restrict competition by determining whether the prohibited activity is of the same type as that actually engaged in by the former employer." *Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 416, 718 S.E.2d 762, 764 (2011). Virginia courts have struck down non-compete provisions as overbroad that prohibited a former employee from owning or working for any business similar to the type of business conducted by the former employer, where the type of business was defined too broadly. *Motion Control Systems, Inc. v. East*, 262 Va. 33, 546 S.E.2d 424 (2001). For example, in *Motion Control Systems*, the court considered a non-compete clause

that defined a competing business as any company engaged in the "design[ ], manufacture[ ], [sale] or distribut[ion of] motors, motor drives or motor controls." *Id.* at 36. The Court found this definition was overbroad where the employer dealt only with specialized brushless motors. *Id.* at 37-38.

Virginia Courts also consider the types of positions a former employee is banned from holding when analyzing the function of a non-compete clause. *See Home Paramount*, 282 Va. at 416. Non-compete clauses that restrict a former employee from working for a competitor in any capacity are generally discouraged, but are not overbroad *per se. See Modern Env'ts*, 263 Va. at 495, 561 S.E.2d at 696. "When a former employer seeks to prohibit its former employees from working for its competitors in any capacity, it must prove a legitimate business interest for doing so." *Id.*

The clause at issue here prevents Ehson from "engag[ing] in the business of hair replacement, on [her] own account, or becom[ing] interest[ed] in such business, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or in any other relation or capacity whatsoever . . . ." Two aspects of this clause cause the Court to take pause. First, "the business of hair replacement" has not been defined in the contract and Hair Club has provided no guidance as to what this clause means. From what the Court can tell, "hair replacement" can cover several different variations of both surgical and non-surgical procedures. Hair Club has repeatedly expressed its interest in protecting the unique procedures it has developed and the clients who patronize Hair Club for these particular procedures. Without more guidance, the Court must, at this pre-discovery junction, conclude that the term "hair replacement" is simply too vague and too broad to protect these specific interests.

5

Second, the non-compete clause essentially prohibits Ehson from working for a business providing hair replacement services in any capacity, or even becoming interested in such a business. Hair Club defends this sweeping language as necessary to further its business interest in retaining its customers. This argument has some merit. Virginia Courts have long "recognized that firms have a legitimate interest in protecting their customer contacts." *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 563 (4th Cir. 1990) ("It can require a great deal of time and personal contact to build a solid base of clients. If your sales representatives are free to leave the firm and try to take these clients along at any minute, this investment can be undermined and thus discouraged."). This Court has previously held that greater restrictions in a non-competition agreement are permissible when the employee, by leaving, "threatens to siphon off the former employer's customers or goodwill." *Capital One Fin. Corp. v. Kanas*, 871 F. Supp. 2d 520, 533 (E.D. Va. 2012) (quoting 6 Williston on Contracts § 13:13 (4th ed.)). An employee's access to confidential information or trade secrets also justifies greater restrictions in a covenant not to compete. *Id.* at 534 (citing *Meissel v. Finley*, 198 Va. 577, 95 S.E.2d 186 (1956)). The Court acknowledges that Ehson had close contact with Hair Club's customers and some of her customers followed her to Illusion Day Spa when she left Hair Club. However, Hair Club's interests in retaining its clients do not justify all of the restrictions in the non-compete clause, such as banning Ehson from becoming a stock holder in a company engaged in hair replacement therapy.

At this point, the Court cannot definitively say that it will enforce the non-compete clause when the clause is squarely before it. Several aspects of this clause appear too vague and not tailored enough to protect Hair Club's asserted business interests. The Court therefore cannot

conclude that Hair Club is likely to ultimately succeed on the merits of its breach of contract claim to the extent it is based on the non-compete clause.

### b. Validity of Non-Solicitation Clause

"Non-solicitation provisions are a species of non-compete agreements," and are evaluated under the same legal standard as non-compete agreements. *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 828 (E.D. Va. 2011). In analyzing non-solicitation agreements, Virginia state courts, and this Court, heavily consider whether the "former employee had direct customer contact or substantial knowledge of the employer's confidential information or methods of operation." *Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 210 (Fairfax 2009); *Brainware*, 808 F. Supp. 2d at 828. These courts have upheld non-solicitation provisions that "expressly limit[] the restriction on solicitation only to those clients who were contacted, solicited, or served by [the employee] while he was employed by [the employer]." *Brainware*, 808 F. Supp. 2d at 828. In contrast, a Virginia court has struck down a non-solicitation agreement that prohibited a former employee from contacting any of the employer's customers that had been invoiced in the year before the employee left for a period of two years because it "impose[d] an unreasonable burden on the employee to know all the customers invoiced." *Lasership*, 79 Va. Cir. at 210.

The clause at issue here prohibits Ehson from "directly or indirectly solicit[ing], circulariz[ing] or aid[ing] in soliciting or circularizing (generally or specifically) any business relating to hair replacement from any customer or customers of [Hair Club], and will not deal with, or provide hair replacement services to, any customers who have, within two (2) years prior to the cessation of [her] employment, dealt with [Hair Club]." The duration of this clause is two-years. This clause echoes the non-solicitation agreement found to be overbroad in *Lasership*. As in *Lasership*, this clause places a burden on Ehson to know all of the customers that have been

7

invoiced by Hair Club, at any Hair Club location, in the two years prior to her departure. As a result, the Court again cannot definitely conclude that Hair Club is likely to succeed on its breach of contract claim as some aspects of it appear overbroad.

### 2. Count II: Misappropriation of Trade Secrets and Confidential Information

Hair Club's second cause of action alleges that Ehson and Illusion misappropriated its trade secrets. "Allegations of trade-secret misappropriation are governed by the Virginia Uniform Trade Secrets Act ('VUTSA')." *Trident Products & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012) *aff'd*, 505 F. App'x 242 (4th Cir. 2013) (citing Va.Code § 59.1–336). In order to establish trade-secret misappropriation under the VUTSA, a plaintiff must prove: "(1) the existence of a 'trade secret'; and (2) the 'misappropriation' of that trade secret by the defendant." *Id.* (citing *MicroStrategy, Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580, 588 (Va. 2004)). An alleged trade secret must "meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy." *Trident Products and Servs., LLC v. Canadian Soiless Wholesale LTD*, 859 F. Supp. 2d 771, 778 (E.D.Va. 2012) (citing Va.Code § 59.1–336).

Hair Club has identified several "trade secrets" it claims were misappropriated by Defendants: pricing information, marketing strategies, customer information, including client names and client preferences, and information regarding system applications and styling techniques. The Court will address each of these in turn.

#### a. Pricing Information

Hair Club first asserts that its pricing information is a trade secret. This Court has found price information is a trade secret when the price information "was qualitatively different from a

8

standard price list" and "was not even made available to customers." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 424 (E.D. Va. 2004). The price information found to be a trade secret in *MicroStrategy* was a discount schedule used to develop quotes for customers using a blend of a "customer's financial strength, competitive forces, and MicroStrategy's willingness to set a particular price to obtain the deal." *Id.*

Hair Club does not contend that its price information is qualitatively different from a standard price list and has cited no cases in which a court has found that a standard price list is considered a trade secret. The Complaint also provides no details to support its conclusory allegation that Defendants have misappropriated Hair Club's pricing information. Without this information, the Court must conclude that Hair Club is not likely to succeed on its trade secret claim to the extent that it is based on pricing information.

### b. Marketing Information

In its opening brief, Hair Club states, "[a]s a threshold matter, Hair Club's . . . marketing strategies are protectable trade secrets because they give Hair Club a competitive advantage over competitors that lack this information." Hair Club then provided no information explaining the efforts it took to keep its marketing strategies secret or how Defendants misappropriated its marketing strategies. Without this basic information the Court cannot conclude that Hair Club is likely to succeed on its trade secret claim based on its marketing strategies.

### c. Client information

Plaintiff next asserts that its customer information is a trade secret that Ehson misappropriated. Under the right set of facts, a list of customer information can be a trade secret. *See* Va. Prac. Tort & Personal Injury Law § 9:8 (citing *American Sales Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476 (E.D. Va. 1994)); *Fid. Glob. Brokerage Grp., Inc. v. Gray*, 2010

9

WL 4646039, at *2 (E.D. Va. Nov. 9, 2010). Hair Club first alleges that it went through great effort and expense to build the list and the list gives it a competitive advantage by providing it with a pool of customers to draw business from. Based on this information, the Court assumes that the customer list has independent economic value. Hair Club next alleges, and Defendants do not contest, that the list is confidential and that Hair Club has taken steps to keep the identities of its clients confidential. Based on this allegation, the Court also assumes that the customer information is not known or readily ascertainable by proper means and is subject to reasonable efforts to maintain its secrecy. The Court, therefore, concludes that Hair Club is likely to establish that its customer list is a trade secret.

Even if it is a trade secret, Defendants contest whether Ehson actually misappropriated the client list. Ehson admits that she solicited Hair Club's clients while she was still working there. However, she argues this is not misappropriation of a trade secret because she obtained the clients' contact information directly from the clients themselves and did not take any client information from Hair Club.

The Court finds Ehson's argument somewhat persuasive. Just as independent development or reverse engineering do not constitute misappropriation of an invention, Va. Prac. Tort and Personal Injury Law § 9:8, the Court finds Ehson's own, independent development of a contact list does not constitute misappropriation of Hair Club's client information. With misappropriation missing, the Court finds that Hair Club is not likely to succeed on its trade secret claim based on its client list.

*d. Hair Replacement Techniques*

Finally, Hair Club asserts that Ehson misappropriated its hair replacement techniques. In its Verified Complaint, Hair Club asserts that it has developed unique hair replacement

techniques, including its trademarked "Strand-by-Stand" process, that are not available to the public or easily ascertainable from other sources. In response, Defendants argue that Hair Club's hair replacement techniques are not trade secrets because they are readily available online and because other salons provide the same services. Ehson has submitted an affidavit that states the services she provides are "very similar" to the services provided by "HPH Corporation" and "Hair Direct" and demonstrated online in YouTube videos.

While Hair Club's hair replacement techniques seem like the type of information that the VUTSA intended to protect, the Court simply does not have enough information to decide whether Hair Club's techniques are in fact trade secrets. In light of the parties' competing allegations, the Court cannot conclude that Hair Club's hair replacement techniques are not known by others in the hair replacement industry. As it is Hair Club's burden to show this, the Court declines to find at this time that Hair Club is likely to succeed on the merits of its trade secret claim based on its hair replacement techniques.

### 3. Count III: Wrongful Interference With Contract and Prospective Business Advantage

Hair Club's third cause of action alleges that Ehson and Illusion wrongfully interfered with its business relationships with its current clients. Virginia recognizes a cause of action for interference with a prospective business or economic advantage. *Glass v. Glass*, 228 Va. 39, 51, 321 S.E.2d 69, 76-77 (1984). This tort has four elements the plaintiff must prove: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." *Id.*

11

Defendants argue that Hair Club has not shown the first element because it has not shown a probability that its relationships with its clients will continue in the future. Courts applying Virginia law have provided little guidance on what constitutes a "business relationship or expectancy, with a probability of future economic benefit." However, the Restatement (Second) of Torts gives examples of types of business relationships or expectancies this tort covers:

> Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts. Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.

Restatement (Second) of Torts § 766B cmt. c (1979); *see also Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 337 (E.D. Va. 2007).

The relationship Hair Club has with its clients could fit into the category of "customary relationship[s] not amounting to a formal contract." Hair Club asserts that it puts significant resources into building and retaining its client base. Further, a "core component" of Hair Club's business "is its provision of regular applications of hair systems and related maintenance and styling services to its clients." Hair Club also maintains that these services are unique to Hair Club. Considering all of these factors, the Court finds it probable that Hair Club's clients would have continued to patronize Hair Club for maintenance services, and thus continued to provide an economic benefit to Hair Club. As this is the only element of this tort that Defendants have attacked, the Court concludes that Hair Club is likely to ultimately succeed on its tortious interference with business expectancy claim.

### 4. Count IV: Tortious Interference With Contractual Relations

Hair Club next asserts a tortious interference with contract claim against Defendant Illusion Day Spa. Specifically, Plaintiff maintains that Illusion knew about Ehson's contract

with Hair Club and employed her, in clear violation of the contract. A tortious interference of contract claim has four elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985).

As stated in the context of Count I, the Court has serious doubts about whether the non-compete and non-solicitation clauses of the contract between Ehson and Hair Club are enforceable. If this contract is invalid, Hair Club will not be able to establish the first element of its tortious interference with contract claim. Thus, for the same reasons stated previously, the Court cannot definitely state that Hair Club is likely to succeed on its tortious interference with contract claim.

### 5. Count V: Unjust Enrichment

Hair Club next asserts a claim of unjust enrichment against both Defendants. An unjust enrichment claim under Virginia law has three elements: (1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that "render it inequitable for the defendant to retain the benefit without paying for its value." *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (quoting *Nossen v. Hoy*, 750 F.Supp. 740, 744-45 (E.D.Va. 1990)).

Hair Club claims Defendants were unjustly enriched because Hair Club gave Ehson access to confidential proprietary information and trade secrets which the Defendants used to steal business from Hair Club. This argument is unpersuasive for several reasons. First, Hair

13

Club has not asserted that it conferred a benefit on Illusion. Rather, Hair Club asserts that Ehson gave this information to Illusion. Hair Club has thus failed to assert the first element of its unjust enrichment claim against Illusion. Second, under Virginia law, "[u]njust enrichment claims arise 'when there is no contractual relationship.'" *Christian Broadcasting Network, Inc. v. Busch*, 2006 WL 2850624 at *8 (Oct. 3, 2006) (quoting *Aerotek, Inc. v. Tyonek Native Corp.*, 2005 WL 3372872, at *3 (E.D.Va. Dec. 8, 2005)). Here, there is a contractual relationship between Ehson and Hair Club. An unjust enrichment claim, therefore, cannot lie against Ehson. Accordingly, the Court concludes that Hair Club is not likely to succeed on its unjust enrichment claim against either Illusion or Ehson.

### B. Likelihood that Plaintiff Will Suffer Irreparable Harm

Hair Club next must show that it "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). There are very limited exceptions to this general rule. *Id.* For example, if the moving party's business cannot survive absent a preliminary injunction or where the defendant may become insolvent before a final judgment can be entered and collected. *Id.*; *see also Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("Mere injuries, however, substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Hair Club primarily asserts that it is currently suffering irreparable harm because Defendants have formed and operated a direct competitor that is taking its current and potential clients. Hair Club asserts that it is incredibly difficult to recapture a client after he has gone to a competitor and that it will never be able to ascertain precisely which clients and revenues it has lost as a result of Defendant's actions.

The Court does not find these injuries irreparable. The type of harm Hair Club complains of is the type of harm that can be compensated by an award of monetary damages. The harm can easily be quantified using business records. Hair Club itself has identified at least 15 clients that it has lost due to Defendants' actions. Hair Club has also identified studies and statistics that show how long a Hair Club client typically stays with Hair Club and how much revenue each client brings in. This demonstrates that Hair Club can calculate the amount of money it has lost due to Defendants' acts. Further, no exception applies in this case. Hair Club has not alleged that its business cannot survive or that Defendants will go insolvent before a final judgment can be rendered.

Hair Club maintains secondarily that failing to enforce Ehson's agreement now will send a dangerous message to its other employees and undermine Hair Club's business model. This also does not constitute irreparable harm. It is the ultimate outcome of this case which will send a message to Hair Club's employees, not the Court's ruling on the motion for preliminary injunction. Hair Club has also failed to identify any other employees who have contemplated or who have chosen to leave and start a competing business because of Ehson's acts.

Finally, the Court finds it notable that Hair Club waited so long to bring this action. According to Hair Club, Defendants began providing hair replacement services in November of 2014 and Ehson left Hair Club in July of 2015. As early as September of 2015, several of Hair

Club's clients informed Hair Club that they were receiving hair services from Ehson. Therefore, before filing this Motion, Ehson had been providing competing services for almost a year and a half and Hair Club had been on notice of this fact for at least six months. If Hair Club truly was suffering irreparable harm it would have brought this action much sooner.

### C. Balance of the Equities/Public Interest

The Court need not address the third or fourth elements of the preliminary injunction test. Hair Club has not established that it is likely to succeed on most of its claims or that it is suffering irreparable harm. As Hair Club has not met its high burden on these factors, the Court finds a preliminary injunction would be inappropriate in this case.

### IV. Conclusion

For the reasons outlined above, the Court finds good cause to DENY the Motion. An appropriate Order will issue.

/s/
Liam O'Grady
United States District Judge

May 6, 2016
Alexandria, VA

16