**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **HAIR CLUB FOR MEN, L.L.C.,** | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 1:16 CV 236 LOG/JFA** |
| | } | |
| **EHSON, Lailuma, and** | } | **SUBJECT TO A MOTION TO SEAL** |
| **ILLUSION DAY SPA, L.L.C.,** | } | |
| **Defendants.** | } | |

**DEFENDANTS' MEMORANDUM OF LAW FOR THEIR**
**MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS**

**PRELIMINARY STATEMENT**

This is a dispute between an employee and her prior employer. The Plaintiff, Hair Club for Men, L.L.C. ("Hair Club") has accused its former hair stylist, Ms. Ehson, of violating the non-compete and non-solicitation provisions in her employment agreement. However, when confronting these clauses at the preliminary injunction stage on April 29, 2016, this Court had grave concerns with their enforceability. The legitimate business reasons articulated by Hair Club during the discovery process do not alleviate these worries. Further, Hair Club has accused Ms. Ehson and her new business, Illusion Day Spa, of misappropriating its confidential trade secrets. However, much of what it claims to be proprietary is anything but. There is also no evidence that anything was taken from a confidential source of the Plaintiff. Finally, Hair Club's remaining claims are built entirely on speculation, lack any evidence that can be introduced at trial, or have no legal basis for recovery.

There are no genuine issues of material fact to be adjudicated in this case. For these reasons, the claims against both Ms. Ehson and Illusion Day Spa are ripe for summary dismissal.

## INDEX OF EXHIBITS

**Exhibit A:** Plaintiff Hair Club for Men, L.L.C.'s Objections and Responses to Defendants' First Set of Interrogatories.

**Exhibit B:** "Hair Club for Men and Women Job Description" (HCM_Ehson 000737 to HCM_Ehson 000738).

**Exhibit C:** "The Stylist's Role at Hair Club and Stylist Job Summary" (HCM_Ehson 000506 to HCM_Ehson 000507).

**Exhibit D:** "Hair Club for Men, L.L.C. Confidentiality, Non-Solicitation, and Non-Compete Agreement" (HCM_Ehson 000739 to HCM_Ehson 000741).[1]

**Exhibit E:** Letter from Hair Club to Ms. Ehson dated July 8, 2016 (HCM_Ehson 000760).

**Exhibit F:** Plaintiff Hair Club for Men, L.L.C.'s Objections and Responses to Defendants' First Request for Production of Documents.

**Exhibit G:** 2011 Hair Club Technical Manual – Excerpt (HCM_Ehson 000001-3, 000090-128, 000160-179).

**Exhibit H:** 2013 Hair Club Technical Manual – Excerpt (HCM_Ehson 000246-249, 000340-378, 000415-434).

**Exhibit I:** Plaintiff Hair Club for Men, L.L.C.'s Rule 26(a)(3) Pretrial Disclosures (D.E. 69).

**Exhibit J:** Affidavit of Lailuma Ehson dated August 5, 2016.

**Exhibit K:** "HPH Wholesale/Export - Order Form" (IDS286-290).

**Exhibit L:** Plaintiff's Exhibits 12 to 18 identified on its Rule 26(a)(3) Pretrial Disclosure (HCM_Ehson 001013-001026).

---

[1] Confidential designation removed by Hair Club.

**Exhibit M:** Hair Club Client Contracts with Client B (HCM_EHSON 001032-38).

**Exhibit N:** Rule 26(a)(2) Disclosure of Mr. E. Daniel Powers dated July 5, 2016.

**Exhibit O:** HPH Corporation Hair Replacement Certificate of Training for Laila Ehson dated November 4, 2013 (IDS285).

**Exhibit P:** Ms. Ehson's Supplemental Responses to Interrogatories to Defendant Lailuma Ehson – Excerpt.

**Exhibit Q:** Affidavit of John Sigillito dated August 4, 2016.

**Exhibit R:** Affidavit of Anthony Batts dated August 4, 2016.

**Exhibit S:** Deposition of Lailuma Ehson dated June 28, 2016 – Excerpt.

## LEGAL STANDARD

A federal court must grant summary judgment if the movant can show: 1) That there are no genuine issues of material fact; and, 2) It is entitled to judgment as a matter of law. *Pro-Football, Inc. v. Blackhorse*, 112 F. Supp.3d 439, 451 (E.D. Va. 2015) *citing* Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court should construe the facts and any inferences therefrom in favor of the non-moving party. *Id*. To defeat a motion for summary judgment, it is the opponent's burden to show that genuine issue of material fact exist which must be resolved at trial. *Id*.

## LIST OF UNDISPUTED MATERIAL FACTS

### A. Background on Hair Club.

**1.**      Plaintiff, Hair Club for Men, L.L.C. ("Hair Club") owns and operates approximately one hundred hair treatment loss centers throughout the United States, including Puerto Rico. Ex. A, Pl. Resp. to Interrog. 5. It also owns and operates thirteen hair treatment loss centers in Canada. Ex. A, Pl. Resp. to Interrog. 5.

2.      Hair Club's primary business is hair replacement services. Ex. A, Pl. Resp. to Interrog. 4.

3.      In addition to the treatment centers it operates, it also has twenty-three franchises and affiliates it provides hair replacement services through. Ex. A, Pl. Resp. to Interrog. 6.

4.      Surgical hair transplants are performed by Hair Club through an affiliated entity, Bosely Medical Group, a sister company of Hair Club which is owned by the same parent corporation. Ex. A, Pl. Resp. to Interrog. 25.

5.      The Bosely Medical Group has approximately seventy-nine locations throughout the United States. "Bosely Hair Restoration Experts: U.S. Locations: Bosely," *https://www.bosley.com/locations-list/Bosely* (last visited: August 1, 2016).

**B.  Ms. Ehson's Employment at Hair Club.**

6.      Ms. Ehson has been a licensed cosmetologist since 1992. D.E. 17, Ex. A, ¶ 5.

7.      On September 28, 2010, Ms. Ehson began her employment at Hair Club's hair loss center located at 7900 Westpark Drive, Suite T100, McLean, Virginia 22102. D.E. 70, ¶ 4; D.E. 17, Ex. A, ¶ 8.

8.      Ms. Ehson was employed by Hair Club as a stylist. D.E. 70, ¶ 2. Ms. Ehson's duties as a stylist are more specifically set forth on the following documents: "Hair Club for Men and Women Job Description", which is attached as <u>Exhibit B</u> and incorporated herein by reference; and, "The Stylist's Role at Hair Club and Stylist Job Summary", attached as <u>Exhibit C</u> and incorporated herein by reference.

9.      On September 23, 2010, Ms. Ehson signed an agreement entitled "Hair Club for Men, LLC Confidentiality, Non-Solicitation and Non-Compete Agreement". Ex. D.

10.     As an employee of Hair Club, Ms. Ehson received training on Hair Club's hair replacement methods, specifically its Strand by Strand process. Ex. F, Pl. Resp. to Req. Prod. 1.

11.     While still a Hair Club employee, Ms. Ehson exchanged her phone number with some of her clients at Hair Club. Ex. S, Ehson Dep. 81:11-21; 108:19-21; 191:8-15.

12.     On July 24, 2015, Ms. Ehson voluntarily terminated her employment with Hair Club. D.E. 70, ¶ 4; D.E. 17, Ex. A, ¶ 8.

**C. Background on Illusion Day Spa.**

13.     On November 4, 2013, while still employed by Hair Club but on her own initiative and expense, Ms. Ehson attended an eight hour training program in hair replacement hosted by the HPH Corporation ("HPH"). Ex. J, ¶ 7; Ex. O; Ex. S., Ehson Dep. 21:3-9.

14.     On October 29, 2014, while still working for Hair Club, Ms. Ehson formally registered Illusion Day Spa with the Virginia State Corporation Commission. Ex. P, Ehson Resp. Interrog. 4.

15.     Ms. Ehson is the sole member and owner of Illusion Day Spa. D.E. 10.

16.     In April 2015, while still employed by Hair Club, Ms. Ehson provided hair replacement services to a former Hair Club client. Ex. N, Ehson Dep. 109:12-15.

17.     On July 25, 2015, Illusion Day Spa had its grand opening for the public. Ex. P, Ehson Resp. Interrog. 4.

18.     Since its grand opening, twenty-seven of Hair Club's former customers have received some services, including hair replacement, at Illusion Day Spa. D.E. 70, ¶ 11.

**ARGUMENT**

I.      **THE CONTRACT IS NOT ENFORCEABLE UNDER VIRGINIA LAW.**

In Count I of its Amended Complaint, Hair Club has asserted that Ms. Ehson violated the "Hair Club for Men, LLC Confidentiality, Non-Solicitation and Non-Compete Agreement." To prove a breach of contract, Hair Club must show that the defendant has a legally enforceable obligation to it. *Filak v. George,* 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). In this case, the contract being enforced against Ms. Ehson contains a non-compete and non-solicitation provision. Ex. D, §§ 3(a) and 3(b). These provisions are unenforceable as they are unduly restrictive and not reasonably drafted to protect Hair Club's legitimate interests.

  **A. The non-compete is not narrowly drawn to protect Hair Club's legitimate business interests.**

      **1.** <u>Applicable Law</u>.

Non-compete agreements are disfavored under Virginia law because they are restraints on competition. *Capital One Fin. Corp. v. Kanas*, 871 F. Supp.2d 520, 527 (E.D. Va. 2012). On a case by case basis, a reviewing court must balance the contractual provisions contained in the agreement with the circumstances of the business and the employee involved. *Id* at 530. Even though not preferred, a non-compete agreement may still be held to be reasonable if the covenant: 1) Is narrowly drawn to protect the employer's legitimate business interest; 2) Not unduly burdensome on the employee's ability to earn a living; and, 3) Consistent with public policy. *Id*. These three interrelated factors are considered by collectively reviewing the reasonableness of the "restriction in terms of function, geographic scope, and duration." *Id*. The employer bears the burden of proof on reasonableness of the non-compete agreement. *Id*.

A restrictive covenant should be narrowly drawn to protect the employer's legitimate business interests. *Capital One*, 871 F. Supp.2d at 530. Covenants that are functionally overbroad

are unreasonable and void as a matter of law. *Id*. at 535. When an employer seeks to prohibit its former employee from working for a competitor in any capacity, it must provide a legitimate business interest for doing so. *Home Paramount Pest Control Cos., Inc. v. Shaffer*, 282 Va. 412, 718 S.E.2d 762, 765 (2011).

> In this case, Ms. Ehson signed an agreement containing the following restrictive covenant:

> "In the event of the termination of my employment, at any time, whether by discharge, resignation or for any other reason, I will not for a period of two (2) years from the date of such termination engage in the business of hair replacement, on my own account, or become interested in such business, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or in any other relation or capacity whatsoever, within a radius of the twenty (20) miles of any Hair Club center operated by [Hair Club] or any of its franchisees or affiliates." Ex. D, § 3(a).

> **2.** <u>The non-compete is functionally overbroad.</u>

Pursuant to the parties' agreement, Ms. Ehson is restricted from "engag[ing] in the business of hair replacement, on [her] own account, or becom[ing] interested in such business directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or in any other relation or capacity whatsoever". Ex. D, § 3(a). Hair Club believes restricting Ms. Ehson from any future occupation or role with a hair replacement business is necessary as Hair Club "provides [its] stylists with a distinctive set of skills to *perform hair replacement services*." Ex. A, Pl. Resp. to Interrog. 8 (emphasis added). Hair Club also provides its stylists with a steady stream of clients who the stylists would not have contact with but for the marketing and advertising efforts of Hair Club. *Id*. It argues that this restriction is necessary to protect its developed client base. *Id*.

> Hair Club's business reasons for this restrictive covenant focus on its need to protect its customers from improper solicitation by its former employees. Generally speaking, protection of customers is a legitimate business interest. *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*,

914 F.2d 556, 563 (4th Cir. 1990). However, Hair Club's interests do not justify the restrictions at issue here.

Ms. Ehson was merely a stylist for Hair Club. D.E. 70, ¶ 2. Her duties were primarily to apply, style, and maintain the customer's replacement hair system while "demonstrate[ing] artistry, creativity, good taste, and sound technical skills" when doing so. Ex. B, ¶¶ 1-3; Ex. C, *2, ¶¶ 2-3. Hair Club only trained her on this activity. Ex. A, Pl. Resp. to Interrog. 8. While she had some limited selling responsibilities, these were primarily to upsell products to currently established clients. Ex. B, ¶¶ 5-6; Ex. C, *2, ¶¶ 5-6. She did not have to actively find, market, or advertise to potential clients. Hair Club itself admits that any clients Ms. Ehson had during her employment were provided to her by it. Ex. A, Pl. Resp. to Interrog. 8. Her role in the company was incredibly minor.

However, Hair Club's agreement prohibits Ms. Ehson from engaging in <u>any capacity</u> with a potential competitor of Hair Club. Ex. D, § 3(a). The prohibited activities contained in the covenant "must be of the same type actually engaged in by the former employer." *Home Paramount*, 718 S.E.2d at 764. Under this clause, Ms. Ehson cannot have any possible position, even if it does not involve providing hair replacement services, with a potential competitor of Hair Club; Ms. Ehson cannot even be a janitor for such a company. The functional restrictions in this clause are not reasonably tied to Ms. Ehson's performance and training in hair replacement service. *Lanmark Technology, Inc. v. Canales*, 454 F. Supp.2d 524, 530 (E.D. Va. 2011) (A non-compete clause is not narrowly drawn when the employee is prohibited from working for a competitor in virtually any capacity).

This clause is so broad that it restricts Ms. Ehson from even holding stock in a company that provides hair replacement services. *See Totten v. Employee Benefits Mgmt., Inc.*, 60 Va. Cir.

342, *2 (Roanoke Cir. 2002). Ms. Ehson is even prohibited from working as a stylist for a company that focuses solely on surgical hair replacement, something that Hair Club does only through an affiliation with the Bosely Medical Group. Ex. A, Pl. Resp. to Interrog. 25. The activities prohibited by the clause are not narrowly tailored to those performed by Ms. Ehson nor the services offered by the Plaintiff. *Home Paramount*, 718 S.E.2d at 765. Hair Club's interest in protecting its customers cannot encumber Ms. Ehson's employment opportunities in this way.

As this Court previously found, the non-compete provision in this case is no different from that encountered by the Virginia Supreme Court in *Motion Control Systems, Inc. v. East*, 262 Va. 33, 546 S.E.2d 424 (2001). D.E. 50, *4-5. Just like in *Motion Control Systems*, the restricted activities in this case "could include a wide range of enterprises unrelated to the business of [Hair Club]." 546 S.E.2d at 426. As drafted, Hair Club's non-compete agreement is limiting Ms. Ehson's employment opportunities rather than protecting its clients from improper solicitation or misuse of its hair replacement system. This provision bars Ms. Ehson from any future employment in any capacity with any company that does hair replacement therapy. This restriction goes far and beyond what is necessary to effect its desired purposes.

**3.** <u>The Non-Compete's geographic scope is greater than necessary</u>.

A court must analyze the geographic and temporal restrictions of the non-compete clause along with its functional restrictions. *Capital One*, 871 F. Supp.2d at 530. "A single consideration that is unreasonable may be reasonable as construed in light of the other two." *Id.* (internal citations omitted). However, in this case, this provision's geographic restrictions do not make the functional restrictions reasonable.

Ms. Ehson is prohibited from "engag[ing] in the business of hair replacement" within "twenty (20) miles of any Hair Club center operated by the Company or any of its franchisees or

affiliates". Ex. D, § 3(a); Ex. E. Hair Club argues that restricting Ms. Ehson from engaging in hair replacement activity within twenty miles of any Hair Club center, franchisee, or affiliate, totaling over almost two hundred different centers, is necessary to protect its customers from improper "solicitation by current and former Hair Club stylists." Ex. A, Pl. Resp. to Interrog. 7. Hair Club invests significant resources in building its client base and would suffer dramatically if "any Stylist could open up a competing business at a lower-price location without any of the start-up costs that Hair Club has incurred in order to build its client base." *Id*.

The restriction as written amounts to a global prohibition; it covers a market area "broader than necessary to protect [the employer's] legitimate business interests." *Pais v. Automation Products, Inc.*, 36 Va. Cir. 230, *7 (Newport News Cir. 1995). Ms. Ehson had no interaction with customers who went to any Hair Club center other than its Tyson Corner location. D.E. 70, ¶ 4; D.E. 17, Ex. A, ¶ 8. When every contact and customer Ms. Ehson interacted with as an employee of Hair Club is located in Virginia, or the immediate surrounding area, Hair Club cannot assert that it is reasonably protecting its customer base by preventing Ms. Ehson from being employed for a hair replacement competitor anywhere else in this country, Canada, and Puerto Rico. This lack of interaction between its former employee and customer base render this provision overbroad. *Blue Ridge Anesthesia v. Gidick,* 239 Va. 369, 373, 389 S.E.2d 467, 469 (1990) (A non-compete is justified where the employee actually comes into personal contact with the employer's customers). Such a restriction serves no legitimate business purpose for Hair Club other than to quash its potential competition and Ms. Ehson's ability to find future work.

As the geographic scope is also too expansive, it cannot save the overbroad functional restrictions of this clause. *See Home Paramount*, 282 Va. at 419 ("The clear overbreadth of the function here cannot be saved by narrow tailoring of the geographic scope and duration").

**4.**  The Non-Compete is ambiguous.

A non-compete clause is "ambiguous" if it is "susceptible to two or more differing interpretations, at least one of which is functionally overbroad." *Capital One*, 871 F. Supp.2d at 535. When such a clause is ambiguous, it is also considered to be overbroad. *Capital One*, 871 F. Supp.2d at 535; *see also Lanmark*, 454 F.Supp.2d at 530-531. The clause in this case is ambiguous for two reasons: 1) It uses undefined terms; and, 2) Does not state when its geographic restrictions take effect.

As noted by this Court, the term "hair replacement" has not been defined in the non-compete clause. D.E. 50, *5. During discovery, Hair Club defined this term to mean "the application of hair systems and related maintenance and styling of hair systems, hair restoration, hair enhancement and hair loss solutions, services, products, processes, treatments and therapies for men, women and children, including without limitation non-surgical and surgical hair restoration options, drug, dietary supplements, and topical treatments and therapy."  Ex. A, Pl. Resp. to Interrog. 4.

However, this provided definition does not match how Hair Club actually operates. As previously stated, surgical hair replacement is only provided by Hair Club's sister company, Bosley Medical Group. Ex. A, Pl. Resp. to Interrog. 25. Pursuant to Hair Club's definition, Ms. Ehson cannot engage in something her former employer does not even provide. This definition therefore renders the non-compete provision overbroad and unenforceable. *See Home Paramount*, 718 S.E.2d at 764 (An employee is only prohibited from working in a role that would compete with his former employer's business).

Further, the non-compete prohibits Ms. Ehson from working within twenty miles of any of Hair Club's locations, franchisees, or affiliates. However, the clause does not state when these

franchisees have to be in existence to trigger Ms. Ehson's geographical restrictions. This means that the clause could be interpreted to mean franchises or affiliates in operation: a) at the time the agreement was executed; b) when Ms. Ehson's employment terminated; or, c) anytime within the two years which the clause is effective.

In *Lanmark Technology*, this Court found that the use of undefined and ambiguous terms opened the clause to the possibility of being construed more restrictive than is necessary. 454 F. Supp.2d at 531. Conceivably, Ms. Ehson could open up a competing hair replacement business that is outside of this geographic restriction and therefore permitted by the parties' agreement. However, within the two year effective period, Hair Club could open up a franchise within twenty miles of Ms. Ehson's business. This activity, conducted solely by Hair Club, would render Ms. Ehson in violation of this provision. While such a hypothetical situation could seem to be a stretch of the language of the agreement, Hair Club "invited [this Court] to contemplate such hypotheticals when it drafted [such] a provision." *Home Paramount*, 718 S.E.2d at 765.

The definition provided by Hair Club does not provide any clarity. Rather, it only causes more confusion as to what is actually inhibited. The ambiguity of this agreement also renders it overbroad and therefore not reasonable.

Based on the foregoing, summary judgment should be returned in favor of Ms. Ehson regarding the enforceability of the parties' non-compete agreement.

**B. Hair Club's Non-Solicitation Agreement is too broad to be enforceable.**

    **1.** Applicable Law.

A non-solicitation provision is also analyzed under the same legal standard of enforceability as a non-compete covenant. *Brainware, Inc. v. Mahan*, 808 F.Supp.2d 820, 828 (E.D. Va. 2011). Generally speaking, a non-solicitation agreement is upheld where "a former

employee [has] direct customer contact or substantial knowledge of the employer's confidential information or methods of operation." *Id.* (internal citations omitted).

The agreement Ms. Ehson signed also contains the following restriction:

"In the event of the termination of my employment, at any time, whether by discharge, resignation or for any other reason, I will not for a period of two (2) years from the date of termination directly or indirectly solicit, circularize or aid in soliciting or circularizing (generally or specifically) any business relating to hair replacement from any customer or customers of the Company, and will not deal with, or provide hair replacement services to, any customers who have, within two (2) years prior to the cessation of my employment, dealt with the Company. In no event shall I be restrained from soliciting or serving the Company's customers for a period beyond two (2) years after the termination of my employment. Ex. D, § 3(b).

> **2.** The non-solicitation provision prohibits contact by Ms. Ehson and customers she did not personally deal with.

The term "Company" as used in this provision refers to "Hair Club for Men, LLC," the nationwide business. Ex. D, *1; Ex. E. This term is not restricted to Hair Club's Tyson's Corner hair replacement center, the sole location Ms. Ehson worked for Hair Club. D.E. 70, ¶ 4; D.E. 17, Ex. A, ¶ 8.

Hair Club again asserts that such a non-solicitation provision is necessary to protect its client base from improper solicitation. Ex. A, Pl. Resp. to Interrogs. 9, 10. It further argues that this agreement also protects its customer's confidentiality. *Id.* It is admitted that Ms. Ehson did have direct, personal contact with Hair Club's customers at its Tyson's Corner location. D.E. 50, *6. There is no disagreement that protection of Hair Club's client relationships is a legitimate business interest.

However, this restriction prohibits Ms. Ehson from providing hair replacement services to any customer of Hair Club, even those she has never serviced while working for the Plaintiff. This non-solicitation provision imposes an impossible knowledge requirement on Ms. Ehson for she must now know the identities of customers who she never personally dealt with. As a nationwide

company, it is inconceivable that an executive, officer, or director of Hair Club, much less a stylist at a single location, could name or recognize each and every customer of the company as a whole. *See Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 210 (Fairfax 2009) (The non-solicitation agreement imposed "an unreasonable burden on the employee to know all the customers invoiced"). Such a provision does not protect the confidentiality of Hair Club customers who Ms. Ehson does not even know about.

The clause here can be contrasted with that those found reasonable in *Blue Ridge* and *Brainware*. In *Blue Ridge*, former employees were not allowed to solicit business from those customers who they had personal contact with. 239 Va. at 373. This non-solicitation provision was further limited to just the territories actually serviced by these employees. Contrasted with the clause here, the provision in *Blue Ridge*: 1) Dealt only with customers who the employees had a prior relationship with; and, 2) Did not expand to "Blue Ridge's entire market area at the time the employees left." *Id*.

In *Brainware*, the non-solicitation clause was reasonable when it was limited to just those clients "contacted, solicited, or served" by the defendant during his employment with the plaintiff. 808 F.Supp.2d at 828. Ms. Ehson, however, is restricted from soliciting customers she had no contact, relationship, or even actual knowledge of.

Hair Club's interests in protecting its customers, including those who actually dealt with by Ms. Ehson, and their confidentiality do not warrant the excessive restrictions on such a low-level employee. As written, the burden is currently on Ms. Ehson to know Hair Club's entire customer database. Ms. Ehson has not been made reasonably aware of what activities and contacts are restricted by the agreement. *Brainware*, 808 F.Supp.2d at 828.

**3.** <u>The non-solicitation provision is also ambiguous</u>.

Ambiguity in the non-solicitation provision also renders it to be overbroad and unenforceable. *Lanmark*, 454 F.Supp.2d at 530-531. This clause also uses the undefined term "hair replacement". As stated in Section I(A)(4) *supra*, Hair Club's intended meaning for this term renders this section overbroad as it prohibits Ms. Ehson from soliciting business that Hair Club is not engaged in.

Further, this provision stops Ms. Ehson from "deal[ing] with…any customers who have, within two (2) years prior to the cessation of [her] employment, dealt with [Hair Club]." Ex. D, § 3(b). The term "deal with" has also not been defined in the agreement. This provision could be interpreted to mean providing any hair services, not just hair replacement services, to any former customer of Hair Club.

It could also mean that Ms. Ehson would not be permitted to engage in any business relationship with a former customer of Hair Club. For example, one of Hair Club's former clients who it alleges has been wrongfully solicited was a home contractor and remodeler. Ex. S, Ehson Dep. 108:16 to 109:1. Ms. Ehson hired this individual to perform construction at her home and Illusion Day Spa. The parties' non-solicitation clause could be interpreted that such an activity, completely unrelated to the business of Hair Club and the protection of its customers, would be a breach of the agreement.

Again, Hair Club has invited the parties to come up with such broad hypotheticals. *Home Paramount*, 282 Va. at 418. The lack of precision in what exactly is prohibited requires a finding by this Court that the non-solicitation provision is also unenforceable.

**C. Enforcement of these restrictive covenants would be unduly burdensome on Ms. Ehson and not in the public's interest.**

Ms. Ehson was merely a stylist for Hair Club. D.E. 70, ¶ 2. Her role was limited to applying the hair replacement piece to the customer and styling it as desired. Exs. B, C. She did not develop the confidential hair replacement techniques utilized by Hair Club nor was she involved in Hair Club's nationwide marketing and advertising efforts. She actually had no administrative or professional duties for the company at all. D.E. 17, Ex. A, ¶ 7. Hair Club is limiting Ms. Ehson's future employment options by effectively prohibiting her from using her twenty years of hair styling experience to work in *any* capacity for a competitor. In fact, under the definition of "hair replacement" provided by Hair Club, Ms. Ehson cannot work for any rival of its sister company, the Bosley Medical Group. In essence, this is also a non-compete for a company who never even employed Ms. Ehson.

Hair styling is also a personal choice. It is common knowledge that a customer chooses to visit that stylist who he or she has a personal relationship and trust with. The public benefits when it is allowed to choose the cosmetologist it would like to deal with. Hair Club's non-competition agreement not only hurts Ms. Ehson, it prevents her customers from being able to exercise their free choice to deal with her for the next two years. These customers did not agree to this restriction and should not be bound by it. *See* Ex. M (Hair Club customers not required to get hair replacement services solely from Hair Club). Therefore, these non-compete and non-solicitation agreements restrict Ms. Ehson's employment opportunities as well as are disfavored under public policy considerations.

II.      **THE INFORMATION BEING PROTECTED BY HAIR CLUB IS EITHER NOT ELIGIBLE FOR TRADE SECRET PROTECTION OR THERE IS NO EVIDENCE OF MISAPPROPRIATION OF IT BY THE DEFENDANTS.**

In Claim II of its Amended Complaint, Hair Club has alleged that both Ms. Ehson and Illusion Day Spa have wrongfully misappropriated certain trade secrets from it. Specifically, these alleged trade secrets are: 1) "Hair Club's styling techniques"; 2) "Customer-specific information (including customer identities, hair styling preferences, and telephone numbers); and, 3) Hair Club's "pricing policies and information". Ex. A, Pl. Resp. to Interrog. 12.

    **A.** <u>Applicable Law</u>.

Trade secret misappropriation is governed by the Virginia Uniform Trade Secrets Act (Virginia Code § 59.1-336, *et seq*.). *Trident Products & Servs., L.L.C. v. Canadian Soiles Wholesale, Ltd.*, 859 F.Supp.2d 771, 778 (E.D. Va. 2012). To establish a violation of the Virginia Uniform Trade Secrets Act, Hair Club must establish: 1) The existence of a trade secret; and, 2) Misappropriation of such trade secret by the Defendants. *Collelo v. Geographic Services, Inc.*, 283 Va. 56, 727 S.E.2d 55, 60 (2012). A "trade secret" is information that: 1) Has independent economic value; 2) Is not generally known or readily ascertainable; and, 3) Is subject to efforts to maintain its secrecy. Va. Code § 59.1-336. "Misappropriation" occurs when a trade secret is wrongfully obtained or used by a person who knows that it was improperly acquired. *Id*.

Just because a Confidentiality Agreement has been signed does not make the items protected by it subject to the Virginia Uniform Trade Secrets Act. *See generally Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp.2d 411, 427 (E.D. Va. 2006), *aff'd*, 258 Fed.Appx. 526 (4th Cir. 2007). Hair Club must show that what it claims to be a trade secret truly is that: confidential information not known by the public. Even if this information qualifies for trade secret

protection, Hair Club must prove that it has been misappropriated by the Defendants. *Collelo*, 727 S.E.2d at 60.

**B.** Hair Club's Hair Styling Techniques.

Ms. Ehson and Illusion Day Spa are accused of using Hair Club's proprietary techniques to the latter's detriment. When asked to provide any documentary evidence regarding any training or instruction Ms. Ehson received on Hair Club's hair styling techniques, specifically its Strand-by-Strand process, Hair Club provided its 2011 Hair Club Technical Manual and 2013 Hair Club Technical Manual. Ex. F, Pl. Resp. to Req. Prod. 1. No other documents regarding training or instruction on any other hair styling or hair replacement techniques were provided. Ex. F, Pl. Resp. to Req. Prod. 18.; s*ee generally* Ex. I.  The relevant excerpts of the 2011 Hair Club Technical Manual and 2013 Hair Club Technical Manual, specifically Modules 7, 8, and 10 outlining Hair Club's hair replacement methods, are attached as Exhibit F and Exhibit G, respectively.

Hair Club uses three different measurement hair styling and replacement techniques: 1) ████████████████████████████████████████████████████████████████████████. Ex. G, *7-2; Ex. H, *7-2.

**1.** *Two of Hair Club's hair styling techniques are "generally known" and "readily ascertainable".*

████████████████████████████████████████ do not qualify as trade secrets as they use procedures that are generally known to the public.

**a.** ██████████████████████ method is not a trade secret.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

**b.** ███████████████████ is not a trade secret.

████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

      This procedure is also not eligible for protection under the Virginia Uniform Trade Secrets Act.

      **2.** *Hair Club's Modules 8 and 10 contain generally known information.*

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

The information contained in Modules 8 and 10 cannot even begin to be considered to qualify for trade secret protection.

   **3.**   *There is no evidence of misappropriation of Hair Club's* ██████████ *method.*

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

Summary judgment should be granted in favor of the Defendants on Hair Club's theory that Ms. Ehson and Illusion Day Spa have violated the Trade Secrets Act when it comes to Hair Club's styling techniques.

   **C.**   <u>Hair Club's customer pricing policies and information are not trade secrets</u>.

Hair Club has accused Ms. Ehson of misappropriating its pricing policies and information. Limited information has been disclosed on Hair Club's pricing during the discovery process. D.E. 69, Exs. 12-18, 36-60. However, Plaintiff's Exhibits 12 to 18, attached herein as <u>Exhibit F</u>, were only disclosed during discovery as they related to Hair Club's calculation of damages. Ex. F, Pl.

Resp. to Reqs. Prod. 14 and 15. It does not appear that Hair Club intended to introduce this evidence as relevant to misappropriation of its confidential information.

Therefore, the only pricing information that Hair Club must believe could have been misappropriated is those prices it charges its customers. However, customer pricing information is not a trade secret. *Phoenix*, 461 F. Supp.2d at 427 (Rates charged by plaintiff to customers is not a trade secret as it was readily available from any potential customer who obtained an estimate). This Court has already found that Hair Club's "price information is [not] qualitatively different from a standard price list". D.E. 50, *9. There is no need for the Court to deviate from this ruling.

Hair Club has stated generally that Ms. Ehson had "knowledge of Hair Club's existing…client contracts." Ex. A, Pl. Resp. Interrog. 22. However, the client contracts used by Hair Club contain only the prices charged to that customer. Ex. F, Pl. Resp. to Req. Prod. 12; s*ee generally* Ex. M, *1, 3, 6; *see generally* Ex. I. No other client contracts have been disclosed during the discovery process. S*ee generally* Ex. I. Therefore, even if this fact were true, there is no confidential pricing information on these contracts that could be misappropriated.

Hair Club only has conclusory stated that Ms. Ehson misappropriated Hair Club's confidential pricing information. This is a bare allegation with no substance behind it. Hair Club cannot succeed on its claim that Ms. Ehson has violated Virginia trade secret law on its pricing information.

**D.** <u>Hair Club's customer specific information has not been misappropriated from a confidential source</u>.

Ms. Ehson has been accused of wrongfully misappropriating specific information on Hair Club's clients, such as customer identities, hair styling preferences, and telephone numbers. Ex. A, Pl. Resp. Interrog. 12. Customer lists and information are eligible for trade secret protection, *Fidelity Global Brokerage Group, Inc. v. Gray*, 2010 WL 4646039, *2 (E.D. Va. 2010).

In this case, unlike in *Fidelity*, there is no evidence that Ms. Ehson obtained this "client specific information" from a confidential source such as Hair Club's database or customer list. Rather, both Hair Club and Ms. Ehson admit that this information came directly from the clients themselves. Ex. A, Pl. Resp. Interrog. ("Ms. Ehson[ had] knowledge of Hair Club's existing clients"); Pl. Resp. Interrog. 12; Ex. S, Ehson Dep. 81:11-21. As stated by this Court, this activity is no different from an "independent development or reverse engineering." D.E. 50, *10. Ms. Ehson obtaining this information directly from the customer is not a theft of Hair Club's trade secrets. *Phoenix*, 461 F. Supp.2d at 427.

Hair Club cannot show any misappropriation of Hair Club's customer information from a confidential or proprietary source. It cannot succeed on this claim either.

**E.** **In the alternative, there is no evidence of actual damages or entitled royalties due to misappropriation of Hair Club's trade secrets.**

Hair Club has retained Mr. E. Daniel Powers to testify as an expert on damages in this case. Ex. A, Pl. Resp. Interrog. 2. He is also the only one who will be providing any testimony on Hair Club's damages due to Ms. Ehson and Illusion Day Spa's alleged trade secret misappropriation. Ex. A, Pl. Resp. Interrogs. 18 and 19; Ex. N.

Mr. Powers' report focuses solely on the damages that Hair Club has incurred for "customer relationships lost." Ex. N, *6. There is no mention in this report or any analysis on how Hair Club has been injured or damaged by Ms. Ehson or Illusion Day Spa stealing proprietary information from it or any "reasonable royalty" Hair Club would be entitled to under Virginia Code § 59.1-338. Ex. N, *6.

By failing to disclose this information, Hair Club is automatically barred from introducing it at trial unless it can show that such a failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see generally Wilkins v. Montgomery*, 751 F.3d 214, 221-222 (4th Cir. 2014)

(Discussion on the purposes of the Rule 26 disclosure in litigation and the Rule 37 sanction). No motion for such relief has been made.

In the alternative, Hair Club has absolutely no evidence that it can introduce at trial for any monetary damages or royalty it would be entitled to if it were to succeed on its trade secret claims. No material facts are in dispute regarding this void in the record. Summary judgment for the Defendants is appropriate on the compensatory damages requested in Plaintiff's Count II.

**III.      HAIR CLUB HAS PROVIDED NO EVIDENCE THAT IT HAD AN ONGOING BUSINESS EXPECTANCY WITH ITS CLIENTS OR THAT ITS CLIENT TERMINATED THEIR RELATIONSHIP WITH IT BUT FOR THE ACTIONS OF THE DEFENDANT.**

Hair Club has claimed that both Defendants wrongfully interfered with its customer contracts. To succeed on this claim, Hair Club must prove: 1) The existence of a business relationship or expectancy with a probability of future economic benefit to it; 2) Knowledge by the Defendants of this relationship or expectancy; 3) <u>But for the intentional interference by the Defendants</u>, this relationship or expectancy would have continued; and, 4) The resulting damages. *Commercial Business Systems, Inc. v. Halifax Corporation*, 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997) (emphasis added). It is Hair Club's burden to satisfy all of these elements to recover. *Id.*

Hair Club alleges that the "Defendants intentionally interfered with [Hair Club's valid and enforceable contracts with its client] by inducing Hair Club's clients to cancel their contracts with Hair Club and instead receive services from Defendants [instead]. Ex. A, Pl. Resp. Interrog. 22. No other facts to support this claim have been disclosed. *Id.*

"Conclusory allegations" or "mere speculation" cannot defeat a motion for summary judgment. *Humphreys & Partners Architects, L.P. v. Lessard*, 43 F.Supp.3d 644, 658 (E.D. Va. 2014). "If the nonmoving party fails to provide evidence establishing that the factfinder could

reasonably decide in his favor, then summary judgment shall be entered." *Id.* (internal citations and quotations omitted).

It is Hair Club's burden to connect that its client cancellations were based primarily on the actions of the Defendants. *Commercial Business Systems*, 484 S.E.2d at 896. Ms. Ehson exchanged her phone numbers with clients prior to leaving her employment at Hair Club. Ex. S, Ehson Dep., 191:8-15. However, this exchange of phone numbers was also done for personal purposes, such as construction at Ms. Ehson's home. Ex. S, Ehson Dep. 108:19-21. The mere exchange of phone numbers should not create a presumption of wrongful inducement.

In fact, Mr. John Sigllito and Mr. Anthony Batts, former clients who Hair Club believes Ms. Ehson wrongfully induced to cancel their contracts, Ex. A, Pl. Resp. Interrog. 14, have provided affidavits stating their reasons for terminating their relationships with Hair Club. Exs. Q, R. These affidavits provide many reasons why Hair Club's continued business expectancy with its clients was not guaranteed. *Id.* These also show reasons other than any intentional inducement or wrongdoing by the Defendants that resulted in Hair Club having client cancellations. *Id.*

Hair Club carries the burden of proof on Count III of its Amended Complaint. As of now, nothing other than mere speculation and conjecture has been provided. Without any actual evidence, summary judgment in favor of the Defendants should be granted. *Humphreys & Partners Architects*, 43 F.Supp.3d at 658.

## IV.     THERE IS NO VALID AGREEMENT BETWEEN HAIR CLUB AND MS. EHSON WHICH COULD HAVE BEEN INTENTIONALLY INTERFERED WITH BY ILLUSION DAY SPA.

In Count IV of its Amended Complaint, Hair Club asserts that Illusion Day Spa induced Ms. Ehson to breach her non-competition and non-solicitation provision with Hair Club. To establish a claim for intentional interference with contractual relations, Hair Club must show: 1)

A valid contract between Hair Club and Ms. Ehson; 2) Illusion Day Spa knew of this contract; 3) Illusion Day Spa intentionally induced Ms. Ehson to breach this contract; and, 4) The resulting damages. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985) (emphasis added).

As previously stated in Sections I(A) and I(B) *supra*, the non-compete and non-solicitation provisions are unenforceable due to their overbreadth. Because there is no valid and enforceable contract between Hair Club and Ms. Ehson, the first element under this analysis cannot be satisfied. Therefore, summary judgment on behalf of the Defendants is appropriate.

**V.      HAIR CLUB HAS NO LEGAL BASIS FOR ITS UNJUST ENRICHMENT THEORY.**

Recovery under unjust enrichment is sought against both Defendants. Am. Compl. Count V. A defendant has been unjustly enriched when: 1) A benefit has been conferred to him by Hair Club; 2) The defendant knew of this benefit; and, 3) The defendant accepted or retained this benefit without paying for its value. *Nossen v. Hoy*, 750 F. Supp. 740, 744-745 (E.D. Va. 1990).

As stated by this Court, Hair Club has asserted that Ms. Ehson has given this information to Illusion Day Spa in violation of her duty of loyalty to her former employer. D.E. 50, *14; Ex. A, Pl. Resp. Interrog. 22. The first element of this claim cannot be satisfied against Illusion Day Spa.

Further, "unjust enrichment claims arise when there is no contractual relationship." D.E. 50, *14 *citing Christian Broadcasting Network, Inc. v. Busch*, 2006 WL 2850624, *8 (E.D. Va. Oct. 3, 2006). A contract is "either entire, meaning all of its provisions are integral to the agreement to the parties, or severable." *Schuiling v. Harris*, 286 Va. 187, 193, 747 S.E.2d 833, 836 (2013).

In this case, the parties have a contract which contains a severability provision. Ex. D., § 3(h). Even if the parties' non-compete and non-solicitation provisions are deemed unenforceable,

the contract still survives. Therefore, Hair Club cannot recover under an unjust enrichment theory for improper solicitation of its clients or breach of Ms. Ehson's duty of loyalty.

Finally, the Virginia Uniform Trade Secrets Act displaces other civil remedies available for litigants regarding misappropriation of confidential or proprietary trade secret information. *Smithfield Ham & Prod. Co. v. Portion Pac Inc.*, 905 F.Supp. 346, 348 (E.D. Va. 1995) *citing* Va. Code § 59.1-341(A). Thus, unjust enrichment is not appropriate for any recovery of the alleged theft of Hair Club's trade secrets.

## VI.    IT IS HAIR CLUB'S BURDEN TO PROVE THE DAMAGES CAUSED TO IT BY MS. EHSON'S BREACH OF HER DUTY OF LOYALTY.

Under Claim VI of its Amended Complaint, Hair Club has accused Ms. Ehson of violating her fiduciary duty of loyalty to it. To succeed on a claim for breach of fiduciary duty, Hair Club must establish: 1) The existence of a duty; 2) Breach of that duty; and, 3) "Damages proximately caused by the breach of [that] duty." *St. Paul Fire & Marine Ins. Co. v. Hoskins*, 5:10-cv-087, *9 (W.D. Va. March 7, 2012) (emphasis added). An employer-employee relationship creates a fiduciary duty. *Id.* Specifically, an employee is not to compete with his employer during his employment. *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289, 576 S.E.2d 757 (2003).

### A.  What acts have breached the duty under this claim?

Ms. Ehson has admitted to providing hair replacement services to a former Hair Club customer in April 2015 while still employed by the Plaintiff. Ex. S, Ehson Dep. 109:12-15. Hair Club will further argue that Ms. Ehson forming Illusion Day Spa and obtaining customer phone numbers, while still employed by it, also breach this duty.

"In the absence of a contract restriction regarding this duty of loyalty, an employee has the right to make arrangement during his employment to complete with his employer after resigning

his post." *Williams*, 576 S.E.2d at 757. If this Court finds that the non-compete and non-solicitation agreements are not valid as argued in Sections I(A) and I(B) *supra*, then opening Illusion Day Spa and obtaining phone numbers to provide hair services to these customers at a later date is not a breach of this duty.

Further, obtaining phone numbers for the customers is not a misuse of confidential information. *Williams*, 576 S.E.2d at 758. Hair Club's own agreement only prohibited Ms. Ehson from misusing its "customer lists (past, present, or prospective). Ex. D., § 3(c). The customer phone numbers have not been designated as confidential information. *See Phoenix*, 258 Fed.Appx. at 538. Mere knowledge of Hair Club's customers is also not confidential or proprietary information that can be protected. *Id.*, 258 Fed.Appx. at 539. If Hair Club truly wanted to protect poaching of its customers, it should have drafted an enforceable non-solicitation provision. *Williams*, 576 S.E.2d at 758 (With "more prudent business practices, the harm complained of could easily have been avoided").

Hair Club is restricted to arguing how it was damaged by the hair replacement conducted by Ms. Ehson at Illusion Day Spa while she was still employed by it. This is the sole fact that could cause Ms. Ehson to incur liability under this theory of relief.

**B.  Damages proximately caused to Hair Club by this breach.**

Hair Club is only entitled to the damages proximately caused by Ms. Ehson's breach of her duty of loyalty. In discovery, Hair Club was asked to provide evidence regarding its damage calculations for its breach of fiduciary duty claim. Ex. A, Interrogs. 18 and 19. Hair Club responded by referring the Defendants to Mr. Powers' Rule 26(a)(2) Disclosure. Ex. A, Pl. Resp. Interrogs. 18 and 19. As stated, Mr. Powers' Rule 26(a)(2) Disclosure focuses solely on Hair Club's expected profits from its former client contracts. *See generally* Ex. N. There is no discussion of what loss,

if any, Hair Club has incurred from this hair replacement performed by Ms. Ehson at Illusion Day Spa between April 2015 and July 2015.

As the discovery period has closed, Hair Club is foreclosed from putting on any additional evidence of its damages. Fed. R. Civ. P. 37(c)(1). Therefore, summary judgment should be granted in favor of the Defendants on this claim as the damages proximately caused by Ms. Ehson's breach of fiduciary duty were not properly identified or disclosed during the applicable discovery period.

## CONCLUSION.

WHEREFORE, based on the foregoing, Ms. Ehson and Illusion Day Spa respectfully request that this Court grant their Motion for Summary Judgment on all counts of Hair Club's Amended Complaint.

Date: August 5, 2016

Respectfully Submitted,<br>
Lailuma Ehson<br>
Illusion Day Spa, L.L.C.<br>
By Counsel

/s/ Kaamil Khan
**Mr. Kaamil Mushtaq Khan**
Virginia State Bar No. 85194
K.M. KHAN LAW, P.C.
8201 Greensboro Drive
Suite 300
McLean, Virginia 22102
(703) 288-5270 (office)
(571) 758-5405 (facsimile)
*kaamil@kmkhan.com*
Counsel for Defendants

## CERTIFICATION

I hereby certify that on August 5, 2016, I electronically filed the foregoing document with

the United States District Court for the Eastern District of Virginia (Alexandria Division) by using

the CM/ECF system. I certify that the following counsel of record are registered as ECF Filers and

that they will be served by the CM/ECF system:

**Ms. Jocelyn R. Cuttino**
**Mr. William J. Delaney**
MORGAN, LEWIS & BOCKIUS, L.L.P.
1111 Pennsylvania Avenue, N.W.
Washington, D.C 20004
(202) 739-3000 (office)
(703) 739-3001 (facsimile)
*jocelyn.cuttino@morganlewis.com*
*William.delaney@morganlewis.com*
Counsel for Plaintiff


/s/ Kaamil Khan_____
**Mr. Kaamil Mushtaq Khan**