IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HAIR CLUB FOR MEN, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:16-cv-236 |
| | ) |
| LAILUMA EHSON and ILLUSION DAY SPA, LLC, | ) |
| | ) |
| Defendants. | ) |

### Memorandum Opinion

This matter comes before the Court on Defendant's Motion for Summary Judgment, Dkt. No. 74, and Plaintiff's Cross-Motion for Summary Judgment, Dkt. No. 88. For the reasons outlined below, the Court finds good cause to GRANT in part Plaintiff's Motion and GRANT in part Defendant's Motion.

### I. Background

Hair Club is in the business of hair replacement and hair therapies. Hair Club's business model is based on forming long-term contracts with its customers who receive hair replacement services on a regular basis. Many of Hair Club's clients do not want others to know that they are receiving hair replacement services. Accordingly, Hair Club takes substantial steps to keep its clients' identities confidential. Hair Club also makes significant investments in obtaining and retaining clients. Hair Club has provided evidence, in the form of an expert report, that since July 1, 2013, it "has maintained an average contract retention rate of 90%." Dkt. 89-1 ¶ 27. This expert also asserts that Hair Club's clients remain customers for an extended period of time,

1

absent interference. Hair Club's male clients stay with Hair Club for an average of 13.5 years and Hair Club's female clients stay with Hair Club for an average of 4.7 years.

Hair Club has composed a Technical Manual that it uses to train its stylists. This manual "contains extremely detailed instruction on the procedures for measuring a client's hair loss and coverage area, designing a template and using facial features and head shape as a guide to develop the best hair system, and determining where to place highlights and specs of grey." Dkt. No. 92, at 11. The manual also contains information on what types of adhesive to use, how to use the adhesives, and the "process of coloring, matching texture, cutting, and styling." *Id.* at 12. According to Hair Club's President, Hair Club's techniques were developed over a long time and at great expense such that "independent development of identical or comparable materials by competitors of Hair Club would be impossible." Dkt. No. 89-11, at 4.

Hair Club now asserts that one of its former employees, Defendant Lailuma Ehson, has stolen its hard-earned clients and is using its hair replacement techniques in violation of Virginia law. Hair Club employed Ehson at its Tysons Corner location from September 28, 2011, until July 24, 2015, when Ehson voluntarily resigned. When Hair Club hired Ehson, she did not have any existing hair replacement clients. As a condition of her employment, Ehson signed a Confidentiality, Non-Solicitation and Non-Compete Agreement. This Agreement generally provided that when Ehson's employment with Hair Club ended, Ehson would not engage in the hair replacement business or become interested in a company that provided such services within twenty miles of any Hair Club center for a period of two years. The Agreement also provided that Ehson would not solicit Hair Club's customers. Finally, Hair Club's Employee Handbook prohibits employees from exchanging personal contact information with Hair Club clients.

2

In October of 2014—while she was still working at Hair Club—Ehson opened a salon called Illusion Day Spa, which was located approximately 15.5 miles from Hair Club's Tysons Corner location. In April of 2015, Ehson began providing hair replacement services at Illusion. Ehson contacted at least twenty-seven of Hair Club clients regarding Illusion. Ehson gave these clients her phone number and told them about her competing business. Ehson convinced twenty-five of Hair Club's clients to leave Hair Club for Illusion. Illusion offered hair replacement services to these clients for $100, which is as much as 83% lower than Hair Club's prices.

Based on these facts, Hair Club filed a Complaint in this Court on March 7, 2016. Hair Club also sought a Preliminary Injunction, which this Court denied on May 6, 2016. Just after discovery began, Hair Club was permitted to file an amended complaint. In that First Amended Complaint ("FAC"), Hair Club brought six causes of action against the Defendants:

- Count I: breach of contract (against Ehson);
- Count II: misappropriation of trade secrets and confidential information (against Ehson and Illusion);
- Count III: wrongful interference with contract and prospective business advantage (against Ehson and Illusion);
- Count IV: tortious interference with contractual relations (against Illusion);
- Count V: unjust enrichment (against Ehson and Illusion); and
- Count VI: breach of fiduciary duty (against Ehson).

After conducting discovery, the parties filed cross-motions for summary judgment. Plaintiff seeks a summary judgment ruling on all but the unjust enrichment claim. Defendants seek a summary judgment ruling on all counts.

## II. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the Court must bear in mind that "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A. Count I: Breach of Contract

Count One alleges that Ehson breached the Confidentiality, Non-Solicitation, and Non-Compete Agreement, which Ehson entered into with Hair Club when her employment began. The elements of a breach of contract action under Virginia law are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Ehson admits that she opened up a competing business and solicited Hair Clubs clients—acts which are in clear violation of the Agreement. However, Ehson argues that the Court should conclude that the contract is unenforceable, thus defeating the breach of contract claim.

4

### 1. Legally Enforceable Obligation

Hair Club asserts that Ehson breached both the non-compete and non-solicitation clauses of her contract. This memo will address the validity of each separately. The validity of both of these clauses is a question of law, so the Court resolves this question at the summary judgment stage. *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 826 (E.D. Va. 2011).

#### a. Validity of the Non-Competition Clause

"[T]he validity of a restrictive covenant is a question of law resolved in light of the language and circumstances surrounding the specific covenant at issue." *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 826 (E.D. Va. 2011). Covenants that restrain trade are disfavored by Virginia courts and if they are too restrictive they may not be legally enforceable. *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 493 (2002). The validity of an employer-employee non-competition agreement is determined using a three-part test which the employer has the burden to meet. *Id.* at 494-95. The employer must show "that the restraint [1] is no greater than necessary to protect a legitimate business interest, [2] is not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and [3] is reasonable in light of sound public policy." *Id.* In analyzing these "three interrelated factors" Virginia courts consider "the restriction in terms of function, geographic scope, and duration." *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001). "Importantly, courts applying this three-part test must take the non-compete provision as written; there is no authority for courts to 'blue pencil' or otherwise rewrite the contract to eliminate any illegal overbreadth." *Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006) (quotations and citations omitted). The non-compete clause at issue here prevents Ehson from "engag[ing] in the business of hair replacement, on [her] own account, or becom[ing] interest[ed] in such business, directly or

5

indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or in any other relation or capacity whatsoever . . . ."

### i. Whether the restraint is greater than necessary to protect Hair Club's legitimate business interests

As an initial matter, Hair Club has a legitimate interest in protecting its customer contacts that it has invested significant time and money building. *See Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 562 (4th Cir. 1990). Defendants argue that the non-compete clause is broader than necessary to protect this interest. Although the non-compete prevents Ehson from working for a potential competitor of Hair Club in any capacity, this provision is not overly broad in light of the nature of Hair Club's business.

First, Virginia Courts have acknowledged that access to "confidential information makes [a] covenant not to compete more reasonable." *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 826 (E.D. Va. 2011) (quoting *Comprehensive Techs. Int'l, Inc. v. Software Artisans, Inc.*, 3 F.3d 730, 738–39 (4th Cir. 1993) (vacated pursuant to settlement)); *see also Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006) ("[Plaintiff] has a legitimate business interest in imposing a reasonable non-compete clause, namely that such a clause would be necessary to protect itself from losing potential work to competitors through employees who leave the company and then compete against [the Plaintiff] using the business sensitive knowledge and contacts they acquired as an employee.") (quotations and citations omitted). Ehson had access to significant proprietary information including clients' specifications, Hair Club's hair replacement techniques and Hair Club's pricing information.

Second, "non-competition agreements are justified where the employee comes into personal contact with his employer's customers." *Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick*, 239 Va. 369, 372–73, 389 S.E.2d 467 (1990) (citing *Paramount Termite Control v.*

6

*Rector*, 238 Va. 171, 175, 380 S.E.2d 922 (1989)). As a stylist, Ehson had frequent and persistent contact with Hair Club's clients.

Third, Virginia courts have upheld non-competition agreements when "the prohibited activity is of the same type as that actually engaged in by the former employer." *Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 416 (2011). For example, in *Blue Ridge Anesthesia*, the Supreme Court of Virginia upheld a non-compete that provided as follows:

> Employee agrees that if his employment terminates for any cause after he has been employed for ninety (90) days, he will not, for a period of three years thereafter, open or be employed by or act on behalf of any competitor of Employer which renders the same or similar services as Employer, within any of the territories serviced by agent of Employer, expressly provided however, that this covenant does not preclude Employee from working in the medical industry in some role which would not compete with the business of Employer.

239 Va. at 370-71. The court found it significant that the clause did not prohibit the former employees, who sold medical equipment for a medical equipment company, "from working in *any* capacity for a medical equipment company, or from selling *any* type of medical equipment. They are only prohibited 'from working in the medical industry in some role which would . . . compete with the business of [the employer]." *Id.* at 373. The court noted that "the restriction does not prohibit the former employees from selling critical care and anesthesia equipment outside their respective former territories or from selling any other goods and medical equipment within their former territories." *Id.*

The non-compete at issue here prohibits Ehson from working for or becoming interested in any company that provides hair replacement services. Because Hair Club only provides one kind of service, in practice this provision only prohibits Ehson from working in some role which would compete with Hair Club—similar to the non-compete

7

in *Blue Ridge Anesthesia*. Also similar to *Blue Ridge Anesthesia*, Ehson can still provide other types of hair styling or salon services within 20 miles of a Hair Club location and she can also provide hair replacement services outside of those designated areas. Finally, the non-compete applies for a shorter amount of time than the restrictive covenant at issue in *Blue Ridge Anesthesia*.

In determining whether a non-compete clause is overbroad, Virginia courts look closely at how the type of competing business is defined. *Motion Control Systems, Inc. v. East*, 262 Va. 33, 546 S.E.2d 424 (2001). For example, in *Motion Control Systems*, the court considered a non-compete clause that defined a competing business as any company engaged in the "design[ ], manufacture[ ], [sale] or distribut[ion of] motors, motor drives or motor controls." *Id.* at 36. The court found the non-compete was overbroad because the employer dealt only with specialized brushless motors. *Id.* at 37-38. Again, the non-compete at issue here is limited to hair replacement services—a very specific type of service and the only type of service Hair Club provides. Unlike in *Motion Control Systems*, the non-compete does not attempt to sweep in other ancillary services or businesses that Hair Club does not actually provide.

For the foregoing reasons, the non-compete is not functionally overbroad and is not greater than necessary to serve Hair Club's legitimate interests. The clause is limited to the business of hair replacement services—the only type of service Hair Club provides. Although it prohibits Ehson from working in any capacity for another hair replacement services company, this is justified because Ehson had exposure to Hair Club's proprietary information and clients, and in light of the limited duration and geographic scope of the clause. Although, the non-compete prevents Ehson from providing hair replacement services within 20 miles of any Hair Club location—and there are over 200 of them—this is justified because Ehson had access to

Hair Club's Technical Manual and she learned Hair Club's techniques. This restriction prevents Ehson from setting up shop next to another Hair Club and siphoning their clients by offering Hair Club's templates at cheaper prices. *See Brainware*, 808 F. Supp. 2d at 827 (upholding non-compete that did not contain a geographical limitation where the employer enjoyed a "global reach").

### ii. Whether the non-compete is unduly harsh or oppressive in curtailing Ehson's ability to earn a livelihood

The non-compete does not harshly or oppressively curtail Ehson's ability to earn a living. As Hair Club points out, Illusion Day Spa offers sixty other services besides hair replacement. Ehson can earn a living providing these other services for a period of two years before offering hair replacement services. In addition, Ehson could have chosen to open Illusion just 4.5 miles farther away from Hair Club's Tysons Corner location if she wanted to provide hair replacement services. This minimal additional distance cannot be characterized as harsh or oppressive.

### iii. Whether the non-compete is reasonable in light of sound public policy

Defendants assert that enforcing this contract would offend public policy because it would prevent Hair Club's clients from choosing the cosmetologist they would like to deal with. Thus, Defendants essentially argue that any non-compete restricting a cosmetologist should not be enforced. This argument is not persuasive. In *Lifesource Inst. of Fertility & Endocrinology v. Gianfortoni*, 18 Va. Cir. 330 (1989), a Virginia Circuit court rejected a similar argument that "it is against public policy to enforce any restrictive covenants in the case of physicians." If this argument does not apply to physicians, who provide vital advice and services regarding an individual's health, then this argument also should not apply to cosmetologists who provide less consequential services. In addition, *Lifesource* also concluded "that it would be against public policy to allow a person to accept the benefits of an agreement but to disregard the terms of the

agreement when it suits his purpose." *Id.* at *4. That is exactly what Ehson seeks to do now. She received benefits from her employment agreement with Hair Club and now seeks to disregard the terms of that agreement. Accordingly, it would actually be against public policy to not enforce the contract.

### iv. Conclusion on Non-Compete Clause

For the reasons discussed above, this Court finds the non-compete clause is valid and enforceable. As there is no dispute over whether Ehson breached the non-compete clause, the Court grants summary judgment in favor of Hair Club on this issue.

### b. Validity of the Non-Solicitation Clause

"Non-solicitation provisions are a species of non-compete agreements, and the same legal standard of enforceability applies to each." *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 828 (E.D. Va. 2011). In analyzing non-solicitation agreements, Virginia state courts, and this Court, heavily consider whether the "former employee had direct customer contact or substantial knowledge of the employer's confidential information or methods of operation." *Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 210 (Fairfax 2009); *Brainware*, 808 F. Supp. 2d at 828. These courts have upheld non-solicitation provisions that "expressly limit[] the restriction on solicitation only to those clients who were contacted, solicited, or served by [the employee] while he was employed by [the employer]." *Brainware*, 808 F. Supp. 2d at 828. In contrast, a Virginia court has struck down a non-solicitation agreement that prohibited a former employee from contacting any of the employer's customers that had been invoiced in the year before the employee left for a period of two years because it "impose[d] an unreasonable burden on the employee to know all the customers invoiced." *Lasership*, 79 Va. Cir. at 210.

10

The clause at issue here prohibits Ehson from soliciting "directly or indirectly . . . any business relating to hair replacement from any customer or customers of [Hair Club]." It also prohibits Ehson from "deal[ing] with, or provid[ing] hair replacement services to, any customers who have, within two (2) years prior to the cessation of [her] employment, dealt with [Hair Club]." This clause echoes the non-solicitation agreement found to be overbroad in *Lasership*. As in *Lasership*, this clause places a burden on Ehson to know all of the customers that have been invoiced by Hair Club, at any Hair Club location, in the two years prior to her departure.

This clause is also overly restrictive on trade and sweeps greater than necessary to serve Hair Club's legitimate interests. A ban on soliciting Hair Club's customers serves Hair Club's interest in protecting its customer contacts. However, a ban on "deal[ing] with" any Hair Club customer prevents Ehson from providing any other type of salon service to a Hair Club customer. This does not serve Hair Club's interests as these alternative salon services do not compete with Hair Club.

For all of these reasons, the Court finds the non-solicitation clause invalid. Accordingly, the Court grants Defendant's motion for summary judgment on this issue.

### B. Count II: Misappropriation of Trade Secrets and Confidential Information

Hair Club's second cause of action alleges that Ehson and Illusion misappropriated its trade secrets in violation of Virginia law. "Allegations of trade-secret misappropriation are governed by the Virginia Uniform Trade Secrets Act ('VUTSA')." *Trident Products & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012) *aff'd*, 505 F. App'x 242 (4th Cir. 2013) (citing Va.Code § 59.1–336). In order to establish trade-secret misappropriation under the VUTSA, a plaintiff must prove: "(1) the existence of a 'trade secret'; and (2) the 'misappropriation' of that trade secret by the defendant." *Id.* (citing *MicroStrategy*,

*Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580, 588 (Va. 2004)). An alleged trade secret must "meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy." *Id.* (citing Va.Code § 59.1–336). "[T]he determination whether a trade secret exists ordinarily presents a question of fact to be determined by the fact finder from the greater weight of the evidence." *Li*, 268 Va. at 264, 601 S.E.2d at 589.

Hair Club asserts that Defendants have misappropriated three things: (1) its client information, (2) its hair replacement techniques and strategies, and (3) its pricing structure. The parties have presented competing characterizations of these purported misappropriations such that triable issues of fact remain as to whether these classes of information are trade secrets and whether Ehson misappropriated them. Accordingly, summary judgment motions for both parties are denied as to Count II.

### C. Count III: Wrongful Interference With Contract and Prospective Business Advantage

Hair Club next asserts a tortious interference with contract claim against Defendants for interfering in Hair Club's contracts with its clients. A tortious interference of contract claim has four elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). "[W]hen a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed 'improper methods.'" *Duggin v. Adams*, 234 Va. 221, 226–27,

12

360 S.E.2d 832, 836 (1987) (quoting *Hechler Chevrolet*, 230 Va. 396, 402 (1985)). In Virginia, "[m]ethods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Id.* (citations omitted). Virginia courts have also recognized that "[i]mproper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* (citations omitted).

Defendants do not seem to dispute that Hair Club has satisfied the first, second and fourth elements it is required to prove to succeed on this claim. Defendants admit that Hair Club maintains ongoing contracts with its customers. These contracts continue until the client cancels upon thirty days' notice. Hair Club has provided evidence that it retains the vast majority of its clients and that the average Hair Club customer remains a customer for 13.5 (men) or 4.7 years (women). Defendants also do not dispute that they knew about Hair Club's relationships with its clients and that Hair Club suffered damage in the form of lost income and profits.

Defendants do argue that the third element has not been satisfied. First, they argue that Ehson never intentionally interfered with Hair Club's relationships with its clients. Ehson admits that she solicited Hair Club's clients. However, Ehson argues that she never intentionally interfered with Hair Club's contracts because she never specifically told the clients she solicited to breach their contracts with Hair Club. This argument is not persuasive. In soliciting business from clients for the exact same services Hair Club provides, and providing those services at a substantially lower price, Ehson aimed to lure the clients away from Hair Club, even if she did not explicitly tell the clients to leave Hair Club. Ehson also knew this solicitation violated

13

company policy and the terms of her employment agreement with Hair Club. All of these factors indicate that Ehson intended to interfere with Hair Club's contracts.

Second, Defendants argue that Hair Club has failed to establish causation. In other words, Defendants argue that Hair Club has failed to show the clients broke their contracts because of Ehson's actions or that they would have continued to be patrons of Hair Club but for Ehson's interference. In support of this argument, Defendants present the affidavits of two former Hair Club clients who assert that they left Hair Club because they were dissatisfied with the services and prices, not because of any interference by Ehson or Illusion. In addition, Defendants point out that twelve of the clients who Hair Club asserts left because of Ehson's intentional interference had their last day of service with Hair Club prior to the formation of Illusion Day Spa on October 29, 2014.

In response, Hair Club asserts that "given hair Club's objective statistical evidence, there is a reasonable certainty that, absent Ehson and Illusion's intentional misconduct," Hair Club would have retained the clients taken by Ehson. However, absent deposition transcripts or affidavits from clients stating that they left Hair Club because of Ehson's solicitation, this remains an open question of fact that should be left for trial and or a damages calculation.

Finally, it does not appear that Defendants contest that Ehson used "improper methods" to interfere with Hair Club's client contracts. The evidence shows that Ehson used "inside or confidential information" when soliciting Hair Club clients. *See Duggin v. Adams*, 234 Va. 221, 226–27, 360 S.E.2d 832, 836 (1987). Ehson used her position as a stylist at Hair Club to obtain the personal contact information of Hair Club's clients—in clear violation of company policy. Ehson then used confidential information about the clients to provide a similar, but far less expensive, service to them. Further, as explained in regard to Count VI, Ehson also breached her

fiduciary duty to Hair Club when she solicited Hair Club's clients while still employed by Hair Club. Thus, Hair Club has satisfied the fifth element of this claim.

As explained above, there is one open question of fact in regard to this claim: whether Hair Club's clients left Hair Club because of Ehson's interference. Because this question is material to the claim, this Court denies both motions for summary judgment as to Count III.

### D. Count IV: Tortious Interference With Contractual Relations

Hair Club next asserts a tortious interference with contract claim against Defendant Illusion Day Spa for interfering with Ehson's employment contract with Hair Club. In other words, Hair Club asserts that Illusion tortuously interfered with Hair Club's employment contract with Ehson by employing her in violation of the non-compete clause. As stated in the previous section, a tortious interference of contract claim has four elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). When a contract is terminable at will, the Plaintiff must also show that the defendant employed "improper methods" when interfering with the contract. *Duggin v. Adams*, 234 Va. 221, 226–27, 360 S.E.2d 832, 836 (1987) (quoting *Hechler Chevrolet*, 230 Va. 396, 402 (1985)).

Defendants argue in opposition to this claim that there is no valid contractual relationship between Hair Club and Ehson because the non-compete and non-solicitation clauses are unenforceable. Defendants also assert that there is no evidence that Ehson breached the confidentiality provision of the contract, which they concede is valid. As discussed above, the

non-compete clause is valid and the severability clause enables the contract to survive a finding that the non-solicitation clause is invalid. Nevertheless, Plaintiff's tortious interference claim against Illusion fails because it misplaces responsibility for the tortious conduct. Ehson herself solicited Hair Club's clients before forming Illusion. Ehson then further breached her contract by forming Illusion. Illusion did not do anything to intentionally interfere with the employment contract or to cause Ehson to breach her contract. Therefore, the Court grants summary judgment on Count IV in favor of the Defendants.

### E. Count V: Unjust Enrichment

In Count V, Hair Club alleges Ehson and Illusion have been unjustly enriched. While Hair Club does not seek summary judgment on this Count the Court must address it because Defendants do seek summary judgment on this Count.

An unjust enrichment claim under Virginia law has three elements: (1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that "render it inequitable for the defendant to retain the benefit without paying for its value." *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (quoting *Nossen v. Hoy*, 750 F.Supp. 740, 744-45 (E.D.Va. 1990)). Hair Club asserts that Defendants "unjustly benefited from using Hair Club's confidential, proprietary information and trade secrets to improperly solicit Hair Club's clients and steal business from Hair Club." FAC ¶ 67.

First, under Virginia law, "[u]njust enrichment claims arise 'when there is no contractual relationship.'" *Christian Broadcasting Network, Inc. v. Busch*, 2006 WL 2850624 at *8 (Oct. 3, 2006) (quoting *Aerotek, Inc. v. Tyonek Native Corp.*, 2005 WL 3372872, at *3 (E.D.Va. Dec. 8, 2005)). Here, there was a contractual relationship between Ehson and Hair Club. An unjust

enrichment claim, therefore, cannot lie against Ehson. Even if this Court were to conclude that the non-compete and non-solicitation clauses of the Agreement were invalid, the unjust enrichment claim still could not succeed against Ehson for two reasons. First, the remainder of the contract would remain intact, due to the severability clause. Second, even absent the non-compete and non-solicitation clauses, there was still a contractual employer-employee relationship between Ehson and Hair Club. Ehson may have been enriched by learning Hair Club's trade secrets and the identities of Hair Club clients, but this enrichment was not unjust because she "paid" for this enrichment through her employment with Hair Club.

Second, Hair Club has not provided evidence, or even asserted that it conferred a benefit on Illusion. Rather, Hair Club asserts that Ehson gave this information to Illusion. Unjust enrichment is an equitable theory of recovery "based upon an implied contract to pay the reasonable value of services rendered." *Mongold v. Woods*, 278 Va. 196, 677 S.E.2d 288, 292 (2009). The Virginia Supreme Court has described the typical unjust enrichment claim as follows: "Where service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor." *Id.* (quoting *In Rea v. Trotter*, 67 Va. (26 Gratt.) 585, 592 (1875)). The relationship between Illusion and Hair Club is far removed from the typical unjust enrichment scenario. There is no basis on which to imply a contract between Hair Club and Illusion. Further, the only case Hair Club cites, *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07CV612 (JCC), 2008 WL 4642163, at *8 (E.D. Va. Oct. 15, 2008) is not applicable. *Buffalo Wings* does not involve an unjust enrichment claim. Rather, it held that Virginia law will impute the knowledge of a director or officer substantially in control of a corporation to that corporation. *Id.* Even if this

principle could be commuted to apply to an unjust enrichment claim, it still would not help Hair Club. As explained above, the unjust enrichment claim cannot succeed against Ehson; therefore, it cannot be imputed to Illusion.

For all of these reasons the Court grants summary judgment in favor of the Defendants on Count V, the unjust enrichment claim.

### F. Count VI: Breach of Fiduciary Duty

In Virginia, "[t]he elements of a claim for breach of fiduciary duty are (1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011) (citing *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444, 442 S.E.2d 660 (Va.1994)). In *Williams v. Dominion Technology Partners, L.L.C.*, 265 Va. 280, 289 (2003), the Virginia Supreme Court explained its approach to claims of breach of a fiduciary duty between employers and employees as follows:

> We have long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment. *See, e.g., Horne v. Holley*, 167 Va. 234, 241, 188 S.E. 169, 172 (1936). Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment. *Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 247 Va. 240, 249, 440 S.E.2d 918, 923 (1994). Nonetheless, in the absence of a contract restriction regarding this duty of loyalty, an employee has the right to make arrangements during his employment to compete with his employer after resigning his post. The employee's right in such circumstances is not absolute. Rather, "[t]his right, based on a policy of free competition, must be balanced with the importance of the integrity and fairness attaching to the relationship between employer and employee." *Feddeman & Co. v. Langan Assoc.*, 260 Va. 35, 42, 530 S.E.2d 668, 672 (2000). Thus, "[u]nder certain circumstances, the exercise of the right may constitute a breach of fiduciary duty. . . . Whether specific conduct taken prior to resignation breaches a fiduciary duty requires a case by case analysis." *Id.*

The *Williams* Court went on to explain "that certain conduct by an employee during the term of his employment will clearly constitute a breach of the duty of loyalty he owes to his employer. Principally, an employee must not have 'misappropriated trade secrets,

18

misused confidential information, [or] solicited an employer's clients or other employees prior to termination of employment.'" *Id.* (quoting *Feddeman & Co.*, 260 Va. at 42, 530 S.E.2d at 672).

Ehson, as an employee of Hair Club, owed a fiduciary duty to Hair Club. Ehson admits that she solicited Hair Club's clients prior to ending her employment with Hair Club. This solicitation alone was a breach of Ehson's fiduciary duty. Although Ehson had a right to make arrangements for future employment while she was still employed by Hair Club, she did not have a right to solicit Hair Club's clients prior to the termination of her employment. Finally, Hair Club has established damages as a result of this breach. As stated above, Hair Club has presented evidence that it would have retained at least 90% of the customers stolen by Ehson for 13.5 years (men) or 4.7 years (women). Hair Club's expert report states that these lost contracts were worth $511,090 to Hair Club. This calculation is subject to adjustment based on evidence adduced by Defendants. Because Hair Club has firmly established all three elements of a breach of fiduciary duty claim and there is no question of material fact in regards to this claim, the Court grants summary judgment in favor of Hair Club on Count VI.

### IV. Conclusion

For the reasons outlined above, the Court finds good cause to GRANT Plaintiff's Motion as to counts I, as it relates to the non-compete clause, and VI, and GRANT Defendant's Motion as to counts I, as it relates to the non-solicitation clause, IV and V. The Court also finds good cause to DENY the motions of both parties on counts II and III. An appropriate Order will issue.

August 31, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge

19