IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HAIR CLUB FOR MEN, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LAILUMA EHSON and ILLUSION DAY SPA, )<br>LLC, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:16-cv-236 |

## Memorandum Opinion

This matter comes before the Court on Defendants Lailuma Ehson and Illusion Day Spa's Motion for New Trial or in the Alternative, a Remittitur, Dkt. No. 147, and Plaintiff Hair Club for Men's ("Hair Club") Motion for Permanent Injunction. Dkt. No. 149. For the reasons discussed below, Defendants' Motion for New Trial or Remittitur is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion for Permament Injunction is GRANTED.

### I. Background

The factual background of this case has been well documented in the Court's previous orders and only facts relevant for these Motions are repeated here. *See, e.g.*, Dkt. No. 113. The jury entered a verdict in favor of the Plaintiff on all counts on September 27, 2016. The special verdict form awarded Plaintiff $156,096 on the Breach of Contract Claim ("Count 1") and awarded $258,330 for each of Plaintiff's Misappropriation of Trade Secrets claim ("Count 2"), wrongful interference with contract claim ("Count 3"), and Breach of Fiduciary Duty claims

("Count 6"). The Jury also responded "Yes" to the question whether "any of the answers to Question 1, 3, 5, or 6 [are] duplicative."[1]

Defendants timely moved for a new trial, or in the alternative a remittitur, alleging that the total damage award of $934,086 exceeds the amount requested by Plaintiff at trial of $511,090 and was contrary to the evidence. Plaintiff has filed an objection to this motion and moved for a permanent injunction to enforce its non-compete rights under its contract with Defendant, Lailuma Ehson. Defendants have not objected to the permanent injunction per se but seek modification of the duration and scope of the injunctive relief. The matter was fully briefed by the parties and the Court heard arguments on November 4, 2016.

## II. Legal Standard

### A. Rule 59 – Motion for New Trial or Remittur

"Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may order a new trial nisi remittitur if it 'concludes that a jury award of compensatory damages is excessive.'" *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 672 (4th Cir. 2015) (quoting *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 502 (4th Cir. 2007)). "A new trial will be granted if '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).

There is no specific standard for remittitur under the Federal Rules of Civil Procedure, but it is well established that a remittitur should be ordered when a jury award is so excessive

---

[1] The misnumbering in the Special Verdict Form appears to be an inconsequential drafting error as there was no Count 5 on the special verdict form.

2

that it will result in a miscarriage of justice. *Cline*, 144 F.3d at 305. The decision as to whether damages are excessive is "entrusted to the sound discretion of the district court." *Robles v. Prince George's Cty., Md.*, 302 F.3d 262, 271 (4th Cir. 2002).

### B. Permanent Injunction

A plaintiff seeking a permanent injunction must satisfy a four-factor test before the court may grant this type of relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In order to prevail, a plaintiff must show: (1) it has suffered an irreparable injury; (2) legal remedies are inadequate to compensate for that injury; (3) after balancing the hardships of the plaintiff and defendant, a remedy in equity is necessary; and (4) that the public interest would not be harmed by a permanent injunction. *Id.*

### III. Discussion

The Court first considers the appropriateness of a remittitur or modification to the damages award before turning to scope of the permanent injunction.

### A. Modification to Damages Award

Defendants have raised two arguments for modification of the damages award. First, Defendants contend that the award is the sum of each of the amounts entered into the special verdict form, without overlap, for a total of $934,086. This damages award would be inconsistent with the Jury's answer on the special verdict form that some of the damages are duplicative and would be inappropriate as a matter of law because it would exceed the amount of damages sought by Plaintiff at trial. Defendants' argument is without merit. Plaintiff agrees that the jury intended for the three awards of $258,330 for counts 2, 3, and 6 to be duplicative, resulting in a total award of $414,426. Because Plaintiff only seeks $414,426, which is less than

3

the original damages sought in the complaint, there is no merit to Defendants' argument that the damages award exceeds the lost profits to which Plaintiff is entitled. *See* Dkt. No. 147, at 2-3.

Defendants also argue that damages should be reduced to $258,330. On the special verdict form, the jury specified that some of the counts in the verdict were duplicative without specifying further. Accordingly, Defendants argue that the Court should regard all damages as duplicate and award only the largest single claim of $258,330. As noted above, Plaintiff agrees that the claims for misappropriation of trade secrets, wrongful interference, and breach of fiduciary duty all concerned the same conduct—Defendants' solicitation and servicing of twenty-four former Hair Club clients. However, Plaintiff argues that the breach of contract claim covers not only the twenty-four clients but also the goodwill and potential customers Plaintiff lost to Defendants.

The parties agree that Virginia courts prohibit the award of duplicative damages "when the claims, duties, and injuries are the same." *Wilkins v. Peninsula Motor Cars, Inc.*, 587 S.E.2d 581, 583 (Va. 2003); *see also Transamerica Occidental Life Ins. Co. v. Sanders*, 91 F.3d 134, 1996 WL 378310, at *1 (4th Cir. July 8, 1996) (unpublished) (per curiam) (vacating judgment and remanding for plaintiff's election of remedies because plaintiff "is not entitled to damages for both causes of action on the same conduct"). However, two claims are not duplicative if the conduct underlying the claims is different. *See Advanced Marine Enterprises, Inc. v. PRC Inc.*, 256 Va. 106, 124 (1998) (finding that treble damages for business conspiracy claim were not duplicative of punitive damages for breach of fiduciary duty and intentional interference claims). To evaluate "whether multiple damage awards constitute impermissible double recovery, the trial court must consider the nature of the claims involved, the duties imposed and the injuries sustained." *Wilkins*, 587 S.E.2d at 583 (citations omitted). The precise responsibility of trial

4

courts in reviewing verdicts is "supervision of the damage awards to avoid double recovery." *Id.*, at 584.

Plaintiff argues that *Advanced Marine*, which held that treble damages in one claim were not duplicative of punitive damages in a separate claim, justifies the imposition of separate damages in this case. In *Advanced Marine*, plaintiff PRC "was required to prove that the defendants combined, associated, agreed, or acted in concert together for the purpose of willfully and maliciously injuring PRC in its business by any means whatever. In contrast, the claims asserted in Counts I through III...relate solely to the employment relationship between PRC and the PRC Managers and employees." *Id.* at 124-25. Similarly, count one in this case related solely to the employment relationship between Plaintiff and Ms. Ehson. Counts two, three, and six required a showing that Defendants interfered with Plaintiff's interest in identified former customers for whom Defendants provided hair replacement services. The court in *Advanced Marine* granted punitive damages with respect to claims of breach of fiduciary duty, intentional interference with contractual relations, and intentional interference with prospective business and contractual relations. *Id.* at 124. The court's grant of treble damages was limited to the business conspiracy claim. *Id.*

However, *Advanced Marine* is distinguishable from this case in one critical respect. The court in *Advanced Marine* combined the compensatory damages for all four counts and entered a single compensatory damages award. *Id.* at 115. Thus, while the right to treble and punitive damages on separate and distinguishable claims is well established, the compensatory damages in such cases are often limited to a single recovery. *See id.*; *see also 21st Century Sys., Inc. v. Perot Sys. Gov't Servs., Inc.*, 284 Va. 32, 46 (2012) ("the trial court stated: that...defendants were liable for the elements of the claim under the trade secret[s] act claim [Count IX] and the

[business] conspiracy claim [Count VII]. And while *the plaintiff can recover the compensatory damages only once*, the plaintiff is entitled to treble those damages under the [business] conspiracy claim and to recover punitive damages under the trade secret claim") (emphasis added). Thus, contrary to standing for the proposition that compensatory damages for different causes of action should be added together, *Advanced Marine* actually supports limiting Plaintiff to a single recovery.

Plaintiff's damages argument at trial also supports a finding that Plaintiff is only entitled to a single recovery. The Court has the authority to supervise the damages award to avoid double recovery even if the case involves causes of action with different elements of proof. *See Wilkins*, 587 S.E.2d at 584. In this case, Plaintiff is correct that the causes of action required proof of different elements. However, Plaintiff's arguments for damages at trial undermine their present contention that the recovery under count one is not duplicative of counts two, three, and six. At trial, Plaintiff's damages expert calculated the amount of damages suffered by Plaintiff by calculating the lost profits with respect to each of the twenty-four individuals for whom Defendants provided hair replacement services. Plaintiff did not argue for any damages based on the breach of the contract absent its effect on the twenty-four identified customers. Therefore, Plaintiff has inextricably entwined the damage awards and given the Court no basis from which to conclude that the damages sought in Count I were based on anything other than the effect of the misconduct on the twenty-four former customers.

Plaintiff's legal support and their damages evidence at trial both point to the same conclusion: compensatory damages for the same injury, based on the same evidence, should only be awarded once. This rule holds even if the injury is articulated in multiple causes of action

6

with separate burdens of proof. Applying that logic to the present Motion, the appropriate total damages award is $258,330.

### B. Scope of Permanent Injunction

Plaintiff requests that the permanent injunction should commence from the date on which the judgment was entered, should bar Ms. Ehson from having any contact with former Hair Club customers including for the provision of services other than hair replacement, and should permanently enjoin "in perpetuity" Defendants from using Plaintiff's trade secrets. The Court considers each issue in turn.

#### *1. Starting Date of Permanent Injunction*

"[T]he court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 556 (1982). Through this power the court may enforce a restrictive employment covenant as a permanent injunction while qualifying the scope and duration of the injunction. *See id.* at 552-56.

In support of its position that the injunction should run from the date of entry of judgment, Plaintiff observes that courts in this district have previously imposed the full length of restrictive contract provisions to run following the entry of judgment. In *JTH Tax, Inc. v. Harlan C. Hanson Enterprises, Inc.*, the circumstances warranted granting plaintiff's request to have the permanent injunction commence from the date of the court's order because the defendant had continued to violate their post-termination duties for several months after the termination of the contract. No. 2:12CV625, 2013 WL 12097424, at *6 (E.D. Va. Mar. 25, 2013). The court explicitly observed that defendants "impermissibly operated a tax preparation business in violation of the franchise agreement, and having the permanent injunction run from the date of

judgment ensures that the [defendants] do not benefit from their violation of the non-compete provisions of the franchise agreement. *Id.* While the court in *Alliance Technologies, Inc. v. Engstrom* did not award a permanent injunction, the court did enforce the terms of confidentiality and non-compete agreements signed by the defendant. No. 4:11CV46, 2012 WL 1580544, at *3 (E.D. Va. May 3, 2012). In *Alliance*, Just as in *JTH Tax*, the court found that "since no evidence has been presented to indicate that [defendant] has ceased to continue activities in violation of his Non-compete Agreement, this injunction will last for two years from the date of entry of this Order." *Id.*

Defendants counter that the permanent injunction should run from the date Ms. Ehson left her employment with Plaintiff and should only prohibit the solicitation of Plaintiff's former customers for hair replacement services. Defendants offer two reasons that the permanent injunction factors do not support enforcing the non-compete and non-solicitation provisions from the date of judgment. First, they argue that Plaintiff has not suffered an irreparable harm because the jury has already compensated Plaintiff for the breach of the employment agreement by awarding damages on Count One of the special verdict form. Thus Defendants argue that Plaintiff will be made whole when it receives the damages award and the remainder of the term of the contract provisions.

Second, Defendant argues that the balance of equities does not support enforcement from the date of judgment. Specifically, Defendants distinguish the present case from both *JTH Tax* and *Alliance Technologies* which were decided at the default judgment stage. The defendants in those cases neither appeared before the court nor received any indication from the court that their conduct was appropriate. On the contrary, Defendants argue that Ms. Ehson continued to violate the non-compete pursuant to her understanding that this Court's denial of Plaintiff's preliminary

8

injunction on April 29, 2016 authorized her continued conduct. First, the Court's ruling did not authorize Ms. Ehson to continue to violate the agreement. Second, the fact that the Court did not grant a preliminary injunction does not supersede the jury's finding that Ms. Ehson was in violation of the non-compete agreement throughout this period. The complaint and motion for preliminary injunction put Ms. Ehson on notice that Plaintiff objected to her conduct and Ms. Ehson persisted in that conduct despite the risk of an adverse judgment. The entry of default judgment or lack of litigation on the merits is not determinative of whether an entry of injunctive relief to honor the terms of a restrictive covenant can commence on the date of entry of the order. *See e.g., Paws With A Cause, Inc. v. Crumpler*, 73 F.3d 358 (4th Cir. 1996) (unpublished) (following a bench trial, "[w]e cannot conclude that the district court abused its discretion in fixing the commencement date from the date of entry of the preliminary injunction on December 20, 1993, even if this results in the injunction remaining in effect longer than three years."); *New River Media Grp., Inc. v. Knighton*, 245 Va. 367, 370, 429 S.E.2d 25, 27 (1993) (following a jury trial, the court remanded "the cause to the trial court for entry of a decree enjoining Knighton from violating the noncompetition agreement for a period of 12 months from the date of the entry of the decree, subject to credit for such time as may be due Knighton by reason of the trial court's entry of a temporary injunction."); *Rosenbaum*, 223 Va. at 551 ("After trial *ore tenus*... the cause [is] remanded to the circuit court for the entry of a decree enjoining the appellee from violating the non-competition provisions of the employment contract for a period of two and one-half years (30 months) from the date of entry of the decree.").

Defendants also argue that the public interest lies in favor of upholding the contract between the parties, and that Hair Club should not be entitled to an injunction greater than what it initially contracted for. Certainly it is against the public interest to offer windfalls to litigants.

However, another public interest is to discourage the use of the court system as a means to mitigate the duration of contractual provisions. *See Rosenbaum*, 223 Va. at 555 ("The result urged by [defendant, that the injunction run from the end of employment,] would reward the breach of contract, encourage protracted litigation, and provide an incentive to dilatory tactics."); *see also JTH Tax, Inc.*, 2013 WL 12097424 at *6 ("having the permanent injunction run from the date of judgment ensures that the [defendants] do not benefit from their violation of the non-compete provisions of the franchise agreement."). Ms. Ehson continued to compete with Plaintiff and solicit Plaintiff's clients in the period following the complaint and through the trial. If the injunction were to run only from the date of termination, Ms. Ehson would have gained the benefit of not only the hair replacement services she provided in the interim, for which Plaintiff was compensated by the jury's award of damages, but also the benefit of any solicitation of current Hair Club customers or diversion of potential Hair Club customers. Thus, Defendants have had the benefit of building intangible and unremunerated assets such as goodwill as a destination for hair replacement services over the last year, in violation of the restrictive covenants. Defendants proposed modification would enable them to recommence operations as if Ms. Ehson had dutifully complied with the restrictive covenants throughout. Such a result is not in the public interest because it weakens confidence in contractual agreements and encourages delay and obfuscation in the court.

Because the Court has broad discretion to craft equitable remedies based on the circumstances unique to the case, it is entirely within the Court's authority to impose the injunctive relief from the date of termination of employment. Nevertheless, the arguments raised by Defendants are unconvincing and the weight of the evidence in similar cases supports the imposition of the injunction from the date of the jury verdict. This injunction adequately

accounts for Ms. Ehson's conduct during the pendency of this litigation and affords Plaintiff's the benefit of their employment agreements with Ms. Ehson.

### 2. Continuing Access to Plaintiff's Former Customers

Plaintiff also asks the Court to enjoin Defendants from using, disclosing, or distributing any of the following information while obtained in the employment of Plaintiff: (1) Plaintiff's proprietary technological information concerning hair replacement techniques; (2) the names and contact information of Plaintiff's past, present, or prospective clients; and (3) the requirements, hair specifications, and purchasing histories of Plaintiff's clients.

Defendants object that the prohibition on the use of Plaintiff's former client identities is overbroad. It will not only prohibit Defendant from offering hair replacement services, but unduly prevent Defendants from providing the customers non-hair replacement services with which Plaintiff does not compete. However, Plaintiff does not base these requests for relief solely on the non-compete provision of the contract but also on the fact that the client identities are trade secrets. Therefore, any use of the client information by Defendant would constitute a continuing trade secret misappropriation.

The parties agreed during the November 4, 2016 hearing that former Hair Club customers are not barred from contacting Defendants themselves. Rather, the scope of this portion of the injunction only bars Defendants from using the client information they gained from their employment with Plaintiff to solicit or service clients.

### 3. Permanent Injunction "in Perpetuity"

Defendants object to the perpetual injunction against the use of trade secret information because the Virginia Uniform Trade Secrets Act provides that "an injunction be terminated when the trade secret has ceased to exist." Va. Code § 59.1-337. However, Plaintiff argues that it will

always derive independent economic value from its trade secrets being generally not known to the public and will always maintain the secrecy of that information. Defendant has offered no evidence to the contrary. In any case, the Court agrees with Plaintiff that Defendants can, upon belief that Plaintiff's trade secrets no longer warrant that protection, petition the Court for dissolution or modification of the injunction. *See id.* (stating that an injunction shall terminate "upon application to the court").

Defendants also object to the inclusion of the word "in perpetuity" with respect to the terms of the permanent injunction. The requested injunction is permanent. The phrase "in perpetuity" is redundant. The parties agreed to the removal of this language during the hearing on November 4, 2016.

### IV. Conclusion and Recommendation

For the reasons discussed above, and for good cause shown, the Court hereby ORDERS that Defendants' Motion for New Trial or Remittitur is GRANTED IN PART and DENIED IN PART. Plaintiff's total damages award is set in the amount of $258,330. Plaintiff's Motion for Permament Injunction is GRANTED and the injunction shall run for a period of two years from the date of the jury verdict, September 27, 2016.

November 14, 2016
Alexandria, VA

/s/
Liam O'Grady
United States District Judge