# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

HAIR CLUB FOR MEN, LLC,

   *Plaintiff,*

  v.

LAILUMA EHSON and ILLUSION DAY SPA, LLC,

   *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:16-cv-236

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for Attorney's Fees and Costs. Dkt. No. 159. For the reasons discussed below, the Court hereby ORDERS that Plaintiff's Motion is GRANTED. Plaintiff is entitled to $208,790.95 in attorney's fees and $11,706.90 in costs.

### I. Background

This demand for attorney's fees arises out of a contract dispute between the Plaintiff, Hair Club for Men, LLC, and one of its former employees, Defendant Lailuma Ehson, and Defendants' misappropriation of Plaintiff's trade secrets and wrongful interference with contract and business advantage. Ms. Ehson served as a hair stylist with Plaintiff from 2011 to July 2015 before opening a competing salon, Defendant Illusion Day Spa. At the time of her employment, Ms. Ehson executed a Confidentiality, Non-Solicitation, and Non-Compete Agreement ("the Agreement"). The Agreement provided that with respect to any breach of the covenants or assurances in the agreement, "[i]n the event that the Company is compelled to file a complaint in any court of competent jurisdiction for an injunction, and /or an accounting and damages, and the

Company is successful is [sic] such action, [employee] will pay reasonable attorney's fees and court costs in connection therewith." Dkt. No. 1, Exh. A at 4.

The parties cross-moved for summary judgment. The Court granted Plaintiff's Motion for Summary Judgment respecting the breach of contract claims and denied Plaintiff's unjust enrichment and tortious interference claims. Dkt. No. 112. The parties undertook a jury trial to assess damages and liability for the tort claims. After a three-day trial, the jury entered a verdict finding Defendants liable on all of the remaining claims and awarding damages to Plaintiff. Dkt. No. 144. The Court subsequently awarded Plaintiff a permanent injunction estopping Defendants from further interference with Plaintiff's business advantage or making use of misappropriated trade secrets. Dkt. No. 157. In the same order, the Court granted a remittitur reducing the total awarded damages to $258,330. *Id.*

Following the Court's Order, Plaintiff moved for attorney's fees and costs. Dkt. No. 159.

## II. Legal Standard

Under the American Rule, a prevailing litigant is generally not entitled to recover attorney's fees from the non-prevailing litigant unless a statute or contract provides otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2164 (2015). Pursuant to Virginia law, "parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006). Where the contract provides for an award of fees to the prevailing party, that party bears "the burden of establishing, as an element of its prima facie case, that the attorneys' fees it seeks are reasonable in relation to the results obtained and were necessary." *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624 (1998). With respect to claims made under the Virginia Uniform Trade Secrets Act, a

court may award "reasonable attorneys' fees to the prevailing party" if "willful and malicious misappropriation exists." VA Code § 59.1-338.1.

If a party is entitled to recover attorney's fees, to calculate the award the Court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In determining the reasonable number of hours and a reasonable rate, the court may consider the twelve factors set out in *Johnson v. Georgia Highway Express Inc.*:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

488 F.2d 714, 717–19 (5th Cir. 1974). There is "a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted). After the lodestar figure is calculated, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88. Finally, the court "award[s] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

### III. Discussion

Plaintiff seeks $297,523.80[1] in attorney's fees and $11,706.90 in costs. This memorandum sets forth Plaintiff's entitlement to the requested fees, the reasonableness of those fees, and Plaintiff's entitlement to costs.

---

[1] Plaintiff avers that the attorney's fees incurred totaled $350,028 but Plaintiff's counsel applied a flat 15% discount and only charged Plaintiff $297,523.80 for the services.

<u>A. Entitlement to Fees</u>

Before determining whether the fees in this case are reasonable the Court must first establish that Plaintiff is entitled to recover its attorney's fees pursuant to contractual or statutory obligations. *See Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 732 S.E.2d 690, 702 (Va. 2012) ("[I]n an action encompassing several claims, the prevailing party is entitled to an award of costs and attorneys' fees only for those claims for which (a) there is a contractual or statutory basis for such an award and (b) the party has prevailed."). The parties have divided the claims into three classes: the breach of contract claim; the Virginia Uniform Trade Secret Act ("VUTSA") claim; and residual claims. The memorandum addresses each of these classes of claims in turn.

*1. Breach of Contract Claim*

As discussed above, Virginia law permits contractual fee-shifting provisions. *See Ulloa*, 271 Va. at 81. The parties agree that the confidentiality, non-solicitation, and non-compete agreement in this case included a fee-shifting provision. The agreement provided that "[i]n the event that the Company is compelled to file a complaint in any court of competent jurisdiction for an injunction, and /or an accounting and damages, and the Company is successful is [sic] such action, [employee] will pay reasonable attorney's fees and court costs in connection therewith." Dkt. No. 1, Exh. A at 4. Accordingly, the parties agree that Plaintiff is entitled to reasonable attorney's fees for its breach of contract claim.

*2. VUTSA Claim*

Plaintiff is only permitted to recover attorney's fees for its VUTSA claim if Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious. Va. Code § 59.1-338.1. Willful and malicious misappropriation is "acting consciously in disregard of another person's

4

rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Owens–Corning Fiberglas Corporation v. Watson*, 413 S.E.2d 630, 640 (1992) (quoting *Booth v. Robertson*, 374 S.E.2d 1, 3 (Va.1988)).

The parties do not dispute that the jury found Defendants had misappropriated Plaintiff's trade secrets. Defendants contend that this misappropriation was not willful or malicious. Specifically, Defendants observe that the jury was not asked to find whether the trade secrets were misappropriated willfully or maliciously on the special verdict form. Further, Plaintiff put forth no evidence that Defendants deliberately intended to hurt Plaintiff or acted out of any animosity towards it. Thus, Defendants argue that "while selfish and ignorant, this Court should not find such behavior to be reckless or malicious." Dkt. No. 163 at 3.

Plaintiff counters that the willful and malicious nature of the misappropriation was evident in Defendants' persistent diversion of Plaintiff's customers and misappropriation of trade secrets for the benefit of their competing business even after they were put on notice that Plaintiff objected to the conduct. Plaintiff also notes that Ms. Ehson lied about her reason for leaving employment with Plaintiff to conceal that she had started a competing business based on the misappropriated trade secrets.

Defendants cite no authority for the proposition that a jury must explicitly find on the special verdict form that misappropriation was willful or malicious in order to assess attorney's fees under VUTSA. In addition, while Defendants are correct that Plaintiff must present some evidence of willfulness or maliciousness, they are incorrect in claiming that no such evidence was presented. The evidence presented in support of the motion for summary judgment and at trial established that Ms. Ehson concealed her competing business from Plaintiff and

misappropriated trade secrets in furtherance of that business. Even if Defendants mistakenly believed that they were free to provide hair replacement services to those customers who no longer received services from Plaintiff, this error would not account for all of the misappropriation claims. The jury found Defendants liable for the customers who received Defendants' services notwithstanding whether they were still enrolled with Plaintiff when it awarded a single lump sum of damages as to the VUTSA claim.

As Plaintiff rightly points out, and Defendants fail to rebut, this case is substantially analogous to *National Legal Research Group v. Lathan*, No. CIV. A. 92-0031-C, 1993 WL 169789 (W.D. Va. May 17, 1993) *aff'd sub nom. Nat'l Legal Research Grp., Inc. v. Lathan*, 42 F.3d 1386 (4th Cir. 1994). In *National Legal Research Group*, the court found that punitive damages[2] were appropriate for a misappropriation claim brought pursuant to the VUTSA based on the evidence presented at summary judgment. The court described the misappropriation thusly:

> Lathan's violation of his fiduciary duty to NLRG established the willful and malicious aspects of his misappropriation. The evidence showed that Lathan planned to leave NLRG as early as November 21, 1988, but that he did not actually resign until March 2, 1992, three years and three months later. Over this period of time, Lathan concealed from NLRG's management his knowledge of its customer complaints, and of Mislow's diversions. Lathan knew that this information was vital to the interests of NLRG. In addition, Lathan concealed his own actions taken to establish a competing business, specifically his diversions of NLRG's clients, his toll-free telephone number, and his Rolodex cards for his new business. Again, Lathan knew that these actions would injure NLRG's business. This evidence is sufficient to support an award of punitive damages.

*Id.* at *11. Similarly, the Court found on summary judgment that Ms. Ehson had breached her fiduciary duty to Plaintiff by soliciting clients prior to termination. The solicitation and competing business were concealed from Plaintiff. It is axiomatic that when one of Plaintiff's

---

[2] Courts apply the punitive damages award standard for an award of attorneys' fees under the VUTSA. *See Am. Sales Corp. v. Adventure Travel, Inc.*, 867 F. Supp. 378, 379 (E.D. Va. 1994) ("The Court may award attorneys' fees under the same standard as punitive damages—only if the misappropriation was willful and malicious.").

hair replacement service customers leaves for a competitor that Plaintiff's business suffers.

Accordingly, Defendants attempts to plead ignorance are to no avail. The misappropriation was willful and malicious.

For this reason, the Court awards attorney's fees for the VUTSA claim.

### 3. Residual Claims

Plaintiff also seeks attorney's fees for successful claims for wrongful interference and breach of fiduciary duty and unsuccessful claims for tortious interference with contractual relations and unjust enrichment. There is no statutory or contractual duty to award fees for these claims. Plaintiff contends that it is nevertheless entitled to recover on these claims because they are related to and share a common core of facts with Plaintiff's fee-shifting claims. Defendants contest this characterization.

The Fourth Circuit recently instructed the Court on the proper standard for unsuccessful claims:

> Prevailing party status does not, however, automatically make that party eligible for all the fees they request. In Virginia, "each party [has] the burden of establishing, as an element of its prima facie case, that the attorneys' fees it seeks are reasonable in relation to the results obtained and were necessary." *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624, 499 S.E.2d 829 (1998). Moreover, "[n]either party shall be entitled to recover fees for duplicative work or for work that was performed on unsuccessful claims." Id. It is well-settled in Virginia that "under contractual [fee-shifting] provisions a party is not entitled to recover fees for work performed on unsuccessful claims." *Ulloa v. QSP*, 271 Va. 72, 82, 624 S.E.2d 43 (2006).

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 754 (4th Cir. 2016). The Fourth Circuit also noted that Virginia steadfastly rejects the "common core of facts or related legal theories" approach employed by federal courts as to federal claims and endorsed by the parties in this case. *Id.* at 754, n.8; *see also Ulloa*, 271 Va. at 83. In Zoroastrian, the Fourth Circuit vacated the Court's award of attorney's fees and remanded for further analysis under a contractual fee shifting provision because, even though the

defendants generally prevailed on the merits, they did not prevail on one of their counterclaims. *Id.* at 755. The Fourth Circuit determined that "[a]bsent some discount or reduction for this unsuccessful counterclaim, the court's fee award includes time spent on matters for which Rustam Guiv was not entitled to recover under Virginia law." *Id.* Keeping in mind the Fourth Circuit's admonition in *Zoroastrian Center*, attorney's fees for the unsuccessful claims in this case are not appropriate.

Attorney's fees are also not appropriate under Virginia law for the remaining successful claims. Plaintiff concedes that these fees are not provided for by statute or under the contract but contends that they should nevertheless be awarded because the claims are closely intertwined with the claims for which fees were awarded. The Supreme Court of Virginia's decision in *Ulloa* guides the assessment of fees for successful claims for which no statutory or contractual basis for fees has been provided. In *Ulloa*, the Supreme Court of Virginia found that a prevailing party could not recover for misappropriation of trade secrets where the only basis that the party claimed for attorney's fees was the contractual fee-shifting provision. *Ulloa*, 271 Va. at 81. The Supreme Court held that the misappropriation claim did not qualify as "any action relating to the parties' contract as contemplated by the contract's fee-shifting provision." *Id.* The Supreme Court was not persuaded "that simply because all of QSP's claims were intimately intertwined and depended upon a common factual basis that QSP was relieved of the burden to establish to a reasonable degree of specificity those attorneys' fees associated with its breach of contract claim[.]" *Id.* at 83.

Virginia courts have applied this reasoning in rejecting attorney's fees for successful claims which are vested with no independent statutory or contractual right to recovery. *See Couch v. Manassas Autocars, Inc.*, 77 Va. Cir. 30 (2008) (finding that attorney's fees should not

be permitted for successful revocation claim because the claim was not statutorily or contractually eligible for fee recovery); *Kelley v. Little Charlie's Auto Sales*, No. 4:04CV00083, 2006 WL 2456355, at *6 (W.D. Va. Aug. 22, 2006) (finding that the prevailing party on VCPA and fraud claims was only entitled to recover half of the lodestar figure because only the VCPA claim conferred a legal basis for the recovery of fees); *Unger v. Beatty*, 52 Va. Cir. 289 (2000) ("The separation of fees is thus as to work for which no fees would ever have been recoverable, as opposed to work for which, if successful, fees might have been recovered.").

Plaintiff argues that the claims are all related and share a common core of facts. This proffer does not satisfy the requirement under Virginia law to clearly set out that each successful claim is supported by a statutory or contractual right to attorney's fees. Plaintiff's successful wrongful interference and breach of fiduciary duty claims did not depend on the existence of the contractual relationship between Plaintiff and Defendants or the willful or malicious misappropriation of trade secrets. Rather the claims arise out of Defendants' interference with Plaintiff's contracts with its customers, which is not a cognizable ground for recovery of attorney's fees.

Where, as here, the successful claims are not dependent on provisions of contract or statute that permits recovery of fees, the Court may not award fees for those claims. *See Ulloa*, 271 Va. at 81 ("A successful claim under the Act, including an award of attorneys' fees, is therefore not dependent upon provisions contained in a contract between the parties."). Accordingly, the Court does not award fees for the time devoted to the wrongful interference and breach of fiduciary duty claims.

### B. Lodestar Calculation

As discussed above, the Court determines the lodestar figure by calculating the

reasonable hourly rates and the reasonable number of hours expended. *Robinson*, 560 F.3d at 243. The memorandum addresses each of these elements in turn.

## 1. Reasonableness of Hourly Rates

The reasonable rate is calculated according to the prevailing market rates in the relevant community factoring in any required special skill or experience. *Virginia-Pilot Media Companies, LLC v. Dep't of Justice*, No. 2:14CV577, 2016 WL 4265742, at *4 (E.D. Va. Aug. 10, 2016).

Plaintiff submits the following hourly rates and years of experience for the timekeepers who participated in this matter:[3]

| Attorney/Paralegal | Years of Experience | 2016 Rate |
|---|---|---|
| William J. Delany | 22 | $730 |
| Richard G. Rosenblatt | 26 | $740 |
| Jocelyn R. Cuttino | 9 (5 years in labor and employment law) | $580 |
| Alexander S. Malson | 2 | $350 |
| Rachel A. Ladeau | 3 | $385 |
| Hans-Peter von Thielen | Paralegal (16 years of experience) | $310 |
| Jasmine Chang | Paralegal (3 years of experience) | $255 |

Plaintiff contends that all of the requested rates are within the *Vienna Metro* Matrix which has been adopted by courts in this district as a reasonable indication of appropriate rates for Northern Virginia. *See Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-cv-00502 (E.D. Va. Aug. 24, 2011); *see also Tech Sys., Inc. v. Pyles*, No. 1:12-CV-374 GBL/JFA, 2013 WL 4033650, at *6 (E.D. Va. Aug. 6, 2013) (accepting Vienna Metro Matrix as indicator of reasonable rate in determining an award of attorneys' fees).

---

[3] The hourly rates do not account for the 15% discount which was applied to Plaintiff's final bill.

The *Vienna Metro* Matrix provides the following hourly rates by years of experience:

| Years of Experience | Paralegal | 1–3 | 4–7 | 8–10 | 11–19 | 20+ |
|---|---|---|---|---|---|---|
| Hourly Rate | $130–350 | $250–435 | $350–600 | $465–640 | $520–770 | $505–820 |

*Id.* Plaintiff argues that because its proposed rates fall within the Matrix which is based on the

going rate for fees from 2011, they are reasonable for the rates charged in this case in 2016.

Defendants counter that the *Vienna Metro* Matrix is not appropriate in this case because

the Matrix only applies to complex cases. Defendants argue that the case at bar, while heavily

contested, concerned relatively straightforward legal issues. Defendants analogize the present

case to *Salim v. Dahlberg*, 2016 WL 2930943 at *6 (E.D. Va. May 18, 2016) and *Route Triple*

*Seven Ltd. P'ship v. Total Hockey, Inc.,* 127 F. Supp. 3d 607 (E.D. Va. 2015). In those two

cases, district courts rejected the application of the *Vienna Metro* Matrix because the cases did

not present sufficient complexity so as to warrant the Matrix fees. *See Salim*, 2016 WL

2930943, at *6; *Route Triple Seven*, 127 F. Supp. 3d at 620.

In *Salim*, the plaintiff brought an action for breach of contract, violation of a civil rights

statute, assault, battery, and intentional infliction of emotional distress. *Salim*, 2016 WL

2930943, at *2. The case proceeded through a motion to dismiss, summary judgment, and a

three-day trial. *Id.* The court found that the Vienna Metro Matrix did not apply because, the

case presented only one unique legal issue, whether plaintiff could pursue a claim under 42

U.S.C. § 1981, and the primary evidence concerning liability was a recording of the incident. *Id.*

at *2, 6. The court also found that the affidavit in support of the attorney's fees exhibited only a

general familiarity with the case as opposed to careful scrutiny of the billing records. *Id.* at *6.

In *Route Triple Seven*, the landlord-plaintiff brought suit against the defendant for a

number of alleged breaches of a commercial lease agreement. *Route Triple Seven Ltd. P'ship v.*

*Total Hockey, Inc.*, 127 F. Supp. 3d 607, 611 (E.D. Va. 2015). The parties cross-moved for

summary judgment and the court disposed of all of the claims via the motions. *See id.* at 611-12.
In rejecting the *Vienna Metro* Matrix, the court found:

> "although Mr. Reilly is correct that commercial real estate cases are generally
> more complex than standard breach-of-contract cases, this case did not present
> complex or novel legal issues and did not require extensive fact-finding. At the
> end of the day, its resolution required straightforward application of breach-of-
> contract principles relevant to what constituted a material breach and whether the
> election of remedies clause in the Lease accorded with Virginia public policy.
> Indeed, the case was disposed of by entry of a relatively simple summary
> judgment Order, which the Fourth Circuit affirmed in a brief, unpublished per
> curiam decision."

*Id.* at 618.

Plaintiff counters that these cases are inapposite. Plaintiff distinguishes *Salim* on the

grounds that Plaintiff's affiant in support of the Motion for Attorney's Fees avers that she has

carefully reviewed the requested fees and found them reasonable and consistent with the

prevailing rates for attorneys in Northern Virginia. Plaintiff distinguishes *Route Triple Seven* as

a "garden variety commercial dispute . . . disposed of by entry of a relatively simple summary

judgment order" as compared to the case at bar which required complex legal and factual

determinations. Dkt. No. 164 at 4.

The fact that "hourly rates sought by defendant are at or below the rates quoted in the

*Vienna Metro* Matrix . . . by itself, does not conclusively establish that they are reasonable."

*Route Triple Seven Ltd. P'ship*, 127 F. Supp. 3d at 619. The Court must determine whether the

rates are reasonable given the relative complexity of this case. Recent decisions from courts in

this district and Plaintiff's lengthy history litigating the issues presented illustrate the lack of

complexity in this case.

Despite Plaintiff's objections, this case is markedly similar to *Salim* in duration and scope

and the fee analysis in that case is instructive. Here and in *Salim*, the parties litigated through

preliminary motions, summary judgment, and a brief trial. *See Salim*, 2016 WL 2930943, at *2. In both cases the legal issues at trial were substantially narrowed by earlier court orders and only one unique legal issue remained—in this case whether some of the information claimed by the Plaintiff was eligible for trade secret protection. *See id.* Plaintiff is correct that the affidavit in this case exhibits more than the "general familiarity with the case" found wanting in *Salim*. *See id.* at *6; Dkt. No. 160, Exh. 13. However, the lack of complexity in this case, just as in *Salim*, is apparent from the facts and procedure of the case, not from the affidavits of corroborating attorneys in support of the fee petition.

The lack of complexity of this case is further supported by Plaintiff's long history of litigating the non-competition and non-solicitation terms of its employment agreements in state and federal jurisdictions across the country. *See, e.g., York v. Hair Club For Men, L.L.C.*, No. 01-09-00024-CV, 2009 WL 1840813 (Tex. App. June 25, 2009); *Hair Club for Men, LLC v. Elite Sols. Hair Alternatives, Inc.*, No. 2:07-CV-546-GEB-KJM, 2007 WL 1080588 (E.D. Cal. Apr. 5, 2007); *Hair Club For Men, LLC v. RCDC Corp.*, No. C06-7842 JFPVT, 2007 WL 30591 (N.D. Cal. Jan. 3, 2007); *Kephart v. Hair Returns, Inc.*, 685 So. 2d 959 (Fla. Dist. Ct. App. 1996); *Dallas Hair Club for Men, Inc. v. Johnson*, No. 05-94-01847-CV, 1995 WL 447545 (Tex. App. July 28, 1995); *Hair Club for Men, Ltd. v. Colonna*, No. 21513/91, 1991 WL 326638 (N.Y. Sup. Ct. Nov. 18, 1991).

Plaintiff has even previously litigated the purportedly "novel" argument presented in this case—that customer lists constitute trade secrets. *See, e.g., York*, 2009 WL 1840813, at *2 ("Hair Club moved for a temporary injunction to prevent the Folicure defendants from soliciting Hair Club customers, and from using, disclosing, transferring, or communicating Hair Club's confidential and trade secret customer information."); *Elite Sols. Hair Alternatives, Inc.*, 2007

WL 1080588, at *2 (finding that defendants conceded that customer lists were trade secrets but alleging that their communication with former customers did not constitute misappropriation).

While local counsel was not attorney of record in the aforementioned litigation and it was necessary for Plaintiff to research the law of the Fourth Circuit to bring this action, Plaintiff has considerable experience advancing the legal theories presented before the Court. Further, as Plaintiff's counsel attests, counsel "has a longstanding relationship with [Plaintiff] and, as a result, [Plaintiff's] attorneys were intimately familiar with [Plaintiff's] business model." Dkt. No. 164 at 5. Accordingly and contrary to Plaintiff's representations, this case did not present complex or novel legal issues and, at least for the Plaintiff, was no more than one of a number of lawsuits to enforce its employment agreement against former employees.

Accordingly, Plaintiff's hourly rates, which are predominantly at the high end of the *Vienna Metro* Matrix are not reasonable for this case. *See Salim*, 2016 WL 2930943 at *6 ("Reilly's declaration confirms that the matrix only applies to 'complex civil litigation.'"). Instead, the Court looks to more recent, similarly non-complex cases, for evidence of appropriate fees for this jurisdiction. In *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, a court in this district's Alexandria division found that a rate of $420/hour for partners, $270 per hour for associates, and $120 per hour for litigation support staff were the appropriate rates for a copyright infringement case which was resolved via summary judgment. 152 F. Supp. 3d 503 (E.D. Va. 2015). Those findings were a steep reduction from the prevailing party's request for $750 or more per hour for partners, $550 per hour for of counsel, between $300 and $400 per hour for associates, and approximately $250 per hour for legal assistants. *Id.* at 519. The court in *Humphreys* established its rates by surveying, among others, fee awards issued in the last three years by courts in this district. *See id.* n. 25; *see also Route Triple Seven Ltd. P'ship.*, 127 F.

3d at 503.[4]  Although *Humphreys* did not progress past the summary judgment stage and this case concluded with a three-day jury trial, that fact alone does not render this case complex and deserving of higher hourly rates. *See Salim* 2016 WL 2930943, at *2 (finding a case was not complex despite culminating in a three day trial). For these reasons, the Court finds that the analysis which warranted a reduction of hourly rates in *Humphreys* applies with equal force in this case. Accordingly, the Court adopts the same 25% reduction of the total fee award. *Humphreys*, 152 F. Supp. 3d at 520. That result brings the hourly rates closer to the lower end of the *Vienna Metro* Matrix[5] and renders them appropriate to the complexity level of the case. Nothing in Plaintiff's analysis of the *Johnson* factors which has not otherwise been addressed in this section supports diverging from this overall reduction. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (setting forth *Johnson* factors) (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

### 2. Reasonableness of Time Entries

"The next step in the lodestar analysis is to examine plaintiff's fee petition to determine the appropriate number of attorney hours to multiply by the hourly rates."
*Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 674–75 (E.D. Va. 2015).

---

[4] The Court recently analyzed the "apparent tension between . . . *Humphreys* and *Vienna Metro*" in *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-CV-1611, 2017 WL 600093, at *7 (E.D. Va. Feb. 14, 2017) appeal filed *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 17-1353. The dispute in *BMG* centered on novel copyright issues arising out of the use of peer-to-peer sharing services. *Id.* at *1. The matter was litigated for over two years and culminated in a two-week jury trial. *Id.* at *1-2. The Court found that the *Vienna Metro* standard was applicable because the case "was complex, hard-fought, and presented novel issues of law." *Id.* at *7, 9. While counsel for both sides in the present dispute adequately represented their clients and fought vigorously through motion practice and the three-day trial, this case is not of the same complexity as *BMG* as measured by the overall length of the litigation, the duration of the trial, and the legal issues presented.

[5] The 25% reduction decreases Mr. Delany's hourly rate from $730 to $547.50, Mr. Rosenblatt's rate from $740 to $540, Ms. Cuttino's rate from $580 to $435, Mr. Malson's rate from $350 to $262.50, Ms. Ladeau rate from $385 to $288.75, Mr. von Thielen's rate from $355 to $266.25; and Ms. Chang's rate from $210 to $157.50. As discussed above, these reduced hourly rates do not account for Plaintiff's further 15% reduction.

Defendants raise a number of particularized objections to time entries in Plaintiff's billing records. First, Defendants contend that certain time entries contain vague descriptions. Second, Defendants argue that time incurred on the motion for preliminary injunction and motion for undisputed facts should not be permitted because Plaintiff did not prevail on those claims. Third, Defendants contend that clerical work completed by paralegals should be excluded. Fourth, paralegal work performed by attorneys should not be recovered. Fifth, time billed for travel should not be compensated at the full hourly rate. Sixth, deductions should be made for excessive time spent on tasks. The memorandum addresses each of these arguments in turn.

### a. Vague Time Entries

Defendants cite nearly three dozen time entries which they regard as insufficiently documented to warrant a fee award. "[I]nadequate documentation is a proper basis for reducing a fee award because it prevents an accurate determination of the reasonableness of the time expended in a case." *Am. Bird Conservancy*, 110 F. Supp. at 675.

Plaintiff counters that all but four of the cited entries that lack documentation are the product of redactions made to protect privileged information. Plaintiff notes that courts routinely conclude that a party seeking a fee award may produce redacted invoices in the interest of preserving privilege. *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002); *PNC Bank, NA v. OHCMC–Oswego, LLC*, 2012 WL 2062889, at *3 (N.D. Ill. June 4, 2012); *Crispin Co. v. Petrotub-S.A.*, No. CIV-05-159-C, 2006 WL 2472878, at *2-3 (W.D. Okla. Aug. 24, 2006).

The Court identified two time entries which were highlighted by Defendants and were not subject to redaction: a September 13, 2016 entry of 2.5 hours to "address pretrial filings" and 4.0 hours the following day billed by Mr. Delany to "work on pretrial filings." Plaintiff offers no

explanation for these vague entries. The Court finds that the entries are insufficiently documented to warrant an award of fees and deducts the corresponding 6.5 hours from Mr. Delany's time.

### b. Time Incurred on Unsuccessful Motions

Defendants argue that any time devoted to the motion for preliminary injunction and the motion for undisputed facts and findings of law should not be remunerated because Plaintiff was not successful on those motions. Defendants cite to *Salim* for the proposition that fees should not be awarded for time devoted to unsuccessful *motions*.

This is a misstatement of Virginia law and of the holding in *Salim*. The Court in *Salim* reduced fees for an unsuccessful *claim* of battery. As discussed at length above, denying fees for unsuccessful claims is consistent with Virginia law. However, "[m]erely because a party loses a pre-trial motion related to an issue on which the party ultimately prevails" does not preclude the award of attorney fees where the services were necessary. *See Dewberry & Davis, Inc. v. C3NS, Inc.*, 732 S.E.2d 239, 246 (Va. 2012); *see also In re Gordon Properties, LLC*, No. 09-18086-RGM, 2013 WL 5379828, at *3 (Bankr. E.D. Va. Sept. 26, 2013) ("[the prevailing party] may recover its attorney's fees for unsuccessful motions or actions when it is successful on the claim to which they apply"). The Court may award fees for unsuccessful motions to the extent that the motions were necessary and Plaintiff was ultimately successful on the claims underlying the motions.

As Plaintiff correctly points out, the preliminary motions in this case framed the issues and arguments that would be made at summary judgment and at trial. Once the evidentiary record was developed, Plaintiff ultimately prevailed on a number of the issues raised in the earlier motions. Similarly the motion for undisputed facts and findings of law, though denied,

set forth the same facts which Plaintiff ultimately presented to the jury and upon which the jury rendered a verdict in its favor. Accordingly, it is not appropriate to deduct the time that Plaintiff devoted to these claims.

### c. Clerical Work Completed by Paralegal

Defendants regard twelve of Mr. von Thielen's time entries, totaling 2.5 hours as clerical work for which no fee recovery is warranted. "Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . . attorney fees." *Abusamhadaneh v. Taylor*, No. 1:11CV939, 2013 WL 193778 (E.D.Va. Jan. 17, 2013).

Plaintiff counters that the entries are not clerical because, as the billing entries reflect, the paralegal was tasked with analyzing the substantive filings rather than a strictly administrative task such as "assist[ing] with electronically filing [memorandum]." *Taylor v. Mitre Corp.*, No. 1:11-CV-1247, 2013 WL 588763, at *4 (E.D. Va. Feb. 13, 2013). In the alternative, Plaintiff contends that even if the 2.5 hours cited were clerical, courts have founds that full recovery for the paralegal is warranted where the paralegal spent relatively little time on strictly clerical functions. *See Easter House v. State of Illinois, Dep't of Children & Family Servs.*, 663 F. Supp. 456, 460 (N.D. Ill. 1987).

The time entries cited by Defendants are only a small portion of the nearly 50 hours which the paralegal contributed to the case and which Defendants do not contest. The twelve cited time entries constituted analysis of the filings in this case and accordingly fall within the Supreme Court's "gray area of compensable tasks that might appropriately be performed either by an attorney or a paralegal." *Sky Cable, LLC v. Coley*, No. 5:11CV00048, 2014 WL 4407130, at *5 (W.D. Va. Sept. 8, 2014) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989)). Accordingly, the fee requests for these services are reasonable.

### d. Paralegal Work Performed by Attorneys

Defendants contend that 10.7 hours across four time entries by Mr. Malson, an associate, should not be recoverable because the work, preparing exhibits for trial, should have been completed by a paralegal. Plaintiff counters that it is sometimes more efficient for attorneys to perform some non-legal work and that such an accounting is permitted in this circuit. Because Mr. Malson was intimately familiar with the documents, it took him comparatively less time than it would have taken a paralegal that was unfamiliar with the documents and even if Mr. Malson delegated the work he would have still billed time supervising the paralegal.

The Fourth Circuit has recognized that "in some circumstances, it may be more efficient and reasonable for counsel to perform [non-legal] tasks." *Spell v. McDaniel*, 824 F.2d 1380, 1401-02 (4th Cir. 1987). However, even where fees are awarded for non-legal work performed by attorneys, a reduction is still appropriate "[t]o the extent secretaries could have been competently employed to perform some of this work." *Id.* (quotation and citation omitted).

In this case, Mr. Malson was billing at $350 an hour compared to $255 for the lesser experienced paralegal on the team. As a result, two hours of Mr. Malson's time amounted to nearly the same expense as three hours of the paralegal's time. Accordingly, even if it took the paralegal 33% longer to complete the organizing task, it would still have occasioned the same expense for Plaintiff. Mr. Malson would have needed to review the paralegal's work but this review would take significantly less than the 10.7 hours quoted in the billing records. While Defendants argue that these fees should be altogether removed from the billing record, this seems to negate the fact that meaningful work was accomplished in furtherance of the claims. Accordingly, the Court applies the paralegal rate (as discussed below) to 10 of Mr. Malson's

hours.[6]  The remaining 0.7 hours are appropriately associated with his review of any paralegal work organizing the exhibits.

### e. Travel Time

Defendants argue that certain time entries should not be billed at the full hourly rate because they were devoted to travel time.  Specifically, Defendants allege the following instances of improperly billed travel time:

- on March 4, 2016, Ms. Cuttino and Mr. von Thielen both billed time to deliver the Complaint to the Court at their hourly rate;

- on April 8, 2016, Ms. Cuttino billed two hours to attend a hearing for which argument lasted sixteen minutes—though Defendants concede that further discussions between the parties occurred after the hearing;

- on April 29, 2016, Mr. Delany and Ms. Cuttino billed 4.5 and 5.0 hours respectively to attend the Court's hearing scheduled at 10:00 AM and concluding at 12:27 PM;

- on July 21, 2016 Mr. Delany and Ms. Cuttino billed 2.5 and 1.5 hours respectively to attend the Court's 10:00 AM conference which concluded at 10:39 AM;

- on August 26, 2016 Mr. Delany billed 5.0 hours for a hearing and preparation therewith that was scheduled to begin at 10:00 AM and concluded at 11:51 AM;

- between September 21, 2016 and September 23, 2016, each of Plaintiff's attorneys and other legal professionals recorded different amounts of time for attendance at trial.

Defendants argue that each of these entries likely included travel time which should be billed at a lower rate.

Travel time by attorneys and paralegals, while recoverable, is not compensated at the full hourly rate.  *Project Vote/Voting for America, Inc. v. Long*, 887 F.Supp.2d 704, 716 (E.D. Va. 2012).

---

[6] For clarity, this adjustment is reflected in the final fee accounting through a subtraction of 10 of Mr. Malson's hours and the addition of those 10 hours to Ms. Chang's tally.

Plaintiff contends that Defendants have misstated the billing records and otherwise overstated the amount of travel time. With respect to the March 4 entry, Plaintiff notes that Ms. Cuttino did not travel to the courthouse, rather her time entry shows that she "attend[ed] to the filing of [the] Complaint". Dkt. No. 160, Exh. 1 at 12. With respect to the inconsistent time records among trial team members between September 21, 2016 and September 23, 2016, Plaintiff notes that different members of the trial team had different pre and post-trial responsibilities which required them to spend additional time at the courthouse each day. Plaintiff argues that the remaining claims actually reflect time spent waiting for hearings to take place pursuant to the local rules of the Court and that time spent waiting for hearings to be called should be remunerated.

Plaintiff fails to counter Defendants' citations to the start and end times of the hearings reflected in the scheduled hearing times and the Court's minute entries. Reviewing these docket entries, the Court can delineate the time Plaintiff's counsel spent waiting to be heard and actively engaged in argument. After reviewing the entries, the Court reduces the April 29, 2016 entries to 3 hours each for Mr. Delany and Ms. Cuttino and 1 hour each for Mr. Delany and Ms. Cuttino for the July 21, 2016 hearing. In sum, this amounts to a reduction of Mr. Delany's hours by 3 and Ms. Cuttino's hours by 2.5.[7]

### f. Excessive Time Spent on Tasks

Defendants argue that certain time entries should be reduced as excessive because Plaintiff exercised poor billing judgment. Defendants cite the following instances:

- 7.2 hours devoted to a four page Motion for Expedited Discovery.
- 2 hours by Ms. Cuttino to supervise the filing of the Motion for Expedited Discovery and the Motion for Leave to File an Amended Complaint.

---

[7] The August 26, 2016 entry included time spent preparing for the hearing. While the entry is arguably vague because it does not distinguish between the time spent on each of the activities, it does not follow that any significant amount of time was billed as travel.

- .2 hours each for Ms. Cuttino and Mr. von Thielen to review Defendants' one paragraph response to Plaintiff's Motion for Leave to File an Amended Complaint.

- 8.5 hours for Ms. Cuttino to review Ms. Ehson's deposition transcript.

- An unspecified number of hours for Mr. Malson researching the applicable law for Plaintiff's opposition to the Defendants' Motion for Summary Judgment.

Dkt. No. 163 at 15-17.

Plaintiff counters that these time entries are not excessive. Plaintiff argues that the Motion for Expedited Discovery required considerable labor relative to its importance to the matter as Plaintiff believed that expedited discovery was essential to a proper prosecution of the Motion for Preliminary Injunction. Plaintiff also notes that the time to review the deposition transcript was appropriate because the transcript was essential to Plaintiff's case and was 258 pages long. Finally, Plaintiff notes that Ms. Cuttino's supervision of the filings should not be reduced because it was not an appreciable amount of administrative work over the course of the more than 700 hours devoted to this matter.

Of these entries, only the two hours spent by Ms. Cuttino supervising filings is subject to reduction because such supervision need not be completed by a senior associate and in any case should not require such a lengthy time commitment. These two hours will be deducted in full. The remaining entries are not excessive. The Motion for Expedited Discovery was a key filing for the Plaintiff and the time devoted to preparing that filing was not unreasonable. Similarly, the deposition transcript was an essential document for preparing the Motion for Summary Judgment and it was not unreasonable for Ms. Cuttino to devote 8.5 hours to review. Defendants failed to identify what amount of time that Mr. Malson devoted to researching the applicable law for the Motion for Summary Judgment was unreasonable. Finally, the twelve minutes each that

Ms. Cuttino and Mr. von Thielen devoted to reviewing Defendants' response to the Motion for Leave to File an Amended Complaint is too marginal to be unreasonable.

Accordingly, two hours are deducted from Ms. Cuttino's hours.

### 3. Applying Reductions to the Lodestar Figure

As discussed above, the fee calculation is subject to three stages of reductions. First, the Court does not award fees for the residual claims (*supra* III.A.3.) because there was no contractual or statutory basis for recovery of those claims as required under Virginia law. Next, the Court assesses ten of Mr. Malson's hours at the paralegal rate, and discounts three of Mr. Delany's hours, and 4.5 of Ms. Cuttino's hours because the entries were not reasonable for the reasons discussed in the preceding section. The hourly rates for all timekeepers are reduced by 15% to account for the fee discount which Plaintiff's counsel provided for its client. Finally, the hourly rates are reduced by a further 25% to bring the requested amounts in line with rates accepted for non-complex litigation in this jurisdiction.

To properly reduce the hours associated with the residual claims, the Court has scrutinized the billing records for any references to work devoted to those claims. Labor generally devoted to revising and preparing briefings would be necessary notwithstanding the residual claims so no discount is appropriate except for entries expressly devoted to the residual claims. Mr. Malson was the only custodian who billed time to the wrongful interference claim. He billed one hour on July 22, 2016 and one hour on July 25, 2016 for a total of two hours. Mr. Malson was also the only custodian who billed time expressly to the tortious interference claim. He billed 2.5 hours on February 18, 2016, 1.7 hours on August 3, 2016, 4.5 hours on August 15, 2016; 2.9 hours on August 18, 2016; .9 hours on August 30, 2016; and 1.2 hours on September 6, 2016. The entries total 13.7 hours devoted to the tortious interference claim. Mr. Malson billed time to the breach of fiduciary claim as follows: one hour on July 22, 2016; .7 hours on July 25, 2016; 1.7 hours

on August 3, 2016; 4.7 hours on August 16, 2016; 1.4 hours on August 18, 2016; and one hour on

August 19, 2016 for a total of 10.5 hours. Ms. Cuttino also billed .9 hours to "research re: evidentiary

issues and breach of fiduciary claim" on May 3, 2016. For the unjust enrichment claim Mr. Malson

was the only billing custodian. He billed one hour on July 26, 2016 and 4.1 hours on August 17,

2016. In total, Mr. Malson billed 31.3 hours to the residual claims. Ms. Cuttino billed .9 hours to

residual claims. Those hours are deducted from the totals.

After applying the reductions described above, the timekeepers are entitled to the

following hourly amounts and rates:

| Attorney/Paralegal | Requested Hours | Adjusted Hours | Requested Rate | Adjusted Rate[8] | Reduced Award |
|---|---|---|---|---|---|
| William J. Delany | 146.4 | 136.9 | $730 | $465.38 | $63,710.52 |
| Richard G. Rosenblatt | 6.6 | 6.6 | $740 | $471.75 | $3,113.55 |
| Jocelyn R. Cuttino | 189.2 | 183.8 | $580 | $369.75 | $67,960.05 |
| Alexander S. Malson | 318.2 | 276.9 | $350 | $223.13 | $61,784.70 |
| Rachel A. Ladeau | 6.3 | 6.3 | $385 | $245.44 | $1,546.27 |
| Hans-Peter von Thielen | 41.6 | 41.6 | $310 | $197.625 | $8,221.20 |
| Jasmine Chang | 5.1 | 15.1 (10 Hours credited from Malson) | $255 | $162.56 | $2,454.66 |
| Total | | | | | $208,790.95 |

As set forth in the table, Plaintiff is entitled to recover $208,790.95 in attorney's fees.

### C. Entitlement to Costs

Plaintiff requests $11,706.90 in costs associated with this litigation. The expenses are

attributable to clerk fees, deposition transcripts, and "miscellaneous services" including copying

and duplication, mailings, and messenger service. The costs request does not include meals,

parking, or local travel to and from the Court.

Pursuant to Federal Rule of Civil Procedure 54(d)(1), Plaintiff is entitled to recover for

costs incurred in the litigation. Recoverable costs include court fees, court-reporter fees and

transcripts "necessarily obtained for use in the case, fees for printing and witnesses, fees for

---

[8] The following adjusted rates are rounded to the nearest cent.

exemplification and copying "necessarily obtained for use" in the case, docket fees, and fees for court-appointed experts. 28 U.S.C. § 1920. Further, Ms. Ehson's employment agreement provided that "in the event that [Plaintiff] is compelled to file a complaint . . . and [Plaintiff] is successful . . . [Defendant] will pay reasonable attorney's fees and *court costs in connection therewith*." Dkt. No. 1, Exh. A at 4 (emphasis added).

Defendants argue that the costs sought are unreasonable in a number of respects. First, Defendants object to the deposition costs because they include fees for a rough draft of the deposition transcript, exhibits, and shipping and handling. Defendants contend that the only portion of the transcript "necessary for use in the case" was the portions of the transcript used to impeach Ms. Ehson at trial. This argument is unpersuasive. Plaintiff determined what portions of the transcript would be used at trial based on a complete review of the transcript. Accordingly, the entire review was necessary in order to identify all of the portions that might be useful at trial. The request for a rough draft of the transcript was appropriate so that Plaintiff could determine whether further depositions would be necessary prior to the close of the discovery process. The shipping and handling costs were a necessary condition for a timely and secure receipt of the transcripts.

Second, Defendants argue that the copying in this case was not properly itemized for the Court to determine if the charges were necessary. Plaintiff has since provided that justification in its reply. Upon review, these copy charges were appropriately limited to court exhibits or were furnished to the court or opposing counsel. *Taylor v. Republic Services, Inc.*, 2014 WL 325169, *12 (E.D. Va. January 29, 2014).

Third, Defendants object to the recovery of costs for service fees from a private courier. Defendants note that such costs are not provided by statute pursuant to U.S.C. § 1920. Further,

Defendants argue that it was an unnecessary expense for Plaintiff to request "rush service" for these services without providing explanation. Plaintiff counters that courts in this district have permitted taxation of private process service fees and that rush service was warranted because Plaintiff was seeking a preliminary injunction for which time was of the essence. In *Mann v. Heckler & Koch Def., Inc.*, a court in this district found that private process server fees were taxable based on the practice of this district and the accord of a majority of the circuit courts. 2011 WL 1599580, at *3 (E.D. Va. Apr. 28, 2011); *see also O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728, 738 (E.D. Va. 1998) (Costs incurred for a private process server . . . are allowable as costs under 28 U.S.C. § 1920.), *aff'd*, 188 F.3d 502 (4th Cir. 1999). The rush on service was justified by Plaintiff's pursuit of preliminary injunctive relief.

Finally, Defendants object to the courier fees incurred by the Plaintiff to deliver copies of pleadings to the Court. As Plaintiff rightly points out, these deliveries were required pursuant to the local rules of the Court. Accordingly the expenses were for the benefit of the Court and are taxable. These costs are also justified pursuant to Ms. Ehson's employment agreement.

As discussed above, Defendants' objections to the costs request are without merit. Accordingly, Plaintiff's request for costs in the amount of $11,706.90 is granted in whole.

### IV. Conclusion

For the reasons discussed above, the Court hereby ORDERS that Plaintiff's Motion is GRANTED. Plaintiff is entitled to $208,790.95 in attorney's fees and $11,706.90 in costs.

April 3, 2017
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

27